No. 32,403

J. F. SPOHN, *Appellee*, v. THE SOUTHERN KANSAS STAGE LINES COMPANY, *Appellant*.

(50 P. 2d 1001)

Opinion filed November 9, 1935.

*J. W. Blood*, *F. W. Prosser*, both of Wichita, and *M. J. Healy*, of Topeka, for the appellant.

*Lester M. Goodell* and *Randal C. Harvey*, both of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendant stage lines company from a judgment rendered against it for personal

injuries and property damage sustained by plaintiff by reason of alleged negligence of defendant which caused a collision between a bus belonging to defendant company and the automobile of the plaintiff at the intersection of Quincy and Sixth streets in Topeka, December 31, 1933. The verdict was for $2,000 covering two items, $1,850 for permanent personal injuries to the plaintiff and $150 for damage to the automobile.

The collision occurred a little after ten o'clock in the forenoon of the day mentioned when plaintiff was driving north on Quincy street and the bus was coming from Kansas City, traveling west on Sixth street.

The principal negligence alleged in the petition was the excessive speed of the bus, which speed was said to be in violation of a city ordinance. The answer in addition to general and special denials alleged contributory negligence on the part of the plaintiff, which was denied in the plaintiff's reply. Among the things stipulated by the parties to the trial was the existence of section 47 of ordinance No. 6139 of the city of Topeka, which, among other things, restricted the speed to twenty-five miles per hour in any business district of the city. And it was further stipulated that the accident occurred in the business district of the city.

The plaintiff testified—

"That as he approached the intersection of Sixth and Quincy he came to a complete stop before he went across; that when he got to the intersection he stopped and looked to the west and the block was clear and looked east and the block was clear; that he looked east down as far as the White Rose oil station on the northeast corner of Monroe and Sixth; that he did not see any cars or vehicles of any kind between that corner and the corner of Sixth and Quincy; and that he then started across the street in low; that he thought he had shifted into high gear before he got struck; that he was unable to state for sure but did not think he got up to ten miles an hour; that the first glimpse he had of the bus was just about the time it was ready to strike the car; that he was looking north after he had looked east and west and stopped and then went into the intersection, and that he was looking straight ahead."

He further testified that he was 78 years old, had driven an automobile since 1909, that he wore glasses—bifocals—mostly for reading, that as he approached the intersection he was driving 20 to 25 miles an hour and came to a stop about even with the curb line, "that when he looked down this 300 feet he didn't see the bus at all; after he started his car he looked straight north and kept looking

north; that he never looked east after he approached the center of Quincy street; that he had no judgment as to the speed of the bus, as he didn't see the bus."

We have set forth more 'of the evidence of the plaintiff than usual for the reason that the appellant urges as the major error in the case the contributory negligence of the plaintiff which it contends barred him from recovery.

There was evidence given by two witnesses for the plaintiff concerning the speed of the bus as it approached the intersection. One said it was about thirty miles per hour, and the other said about forty-five miles per hour. There was evidence introduced by the defendant that the speed of the bus was less than twenty-five miles per hour, that the plaintiff slowed up, but did not stop before entering the intersection and that the driver of the bus sounded the horn two or three times before reaching the intersection. There was evidence introduced by both sides as to the distance of the bus from the east line of the intersection when the driver put on the brakes, varying from 100 feet to the line itself and also as to the distance the bus slid, which varied from a point about 100 feet east of the intersection to the length of the bus within the intersection before the bus stopped in the northwest quarter of the intersection. Counsel for both parties speak of the conflict in the evidence.

There appears to be three points having to do particularly with the question of contributory negligence about which there seems to be no conflict. They are: (1) the fact that the plaintiff did not look to the east while crossing the intersection after having looked east at the crossing and seeing nothing for more than a block east; (2) he did not appear to heed the sound of the horn given two or three times by the bus driver approaching the intersection; and (3) a rule of the road not particularly in evidence, but recognized by both parties in their briefs, of the right of way in favor of the driver and vehicle to the right, which in this case would be the bus, where there were no stop signs, as there were none at this intersection.

These three things can properly be accredited to the defendant in its contention that the plaintiff was guilty of contributory negligence, but they are not sufficient in themselves to justify such a finding. Taking these three points to be against the plaintiff, what is the proper finding as to contributory negligence when the other points involved are taken into consideration, particularly the question of the speed of the bus? We have briefly above stated the ex-

tremes where conflict in evidence exists. It should further be stated that the court, on request, permitted the jury to go to the intersection with proper caution and under charge of a bailiff, so as to view the place of the accident and also to see the car of the plaintiff.

Appellant cites *Antrim v. Speer,* 133 Kan. 297, 299 Pac. 643, where it was held that—

"Under the facts as disclosed in the opinion it is held that one who drove his car in front of a rapidly approaching car at the intersection of two roads, when by observation he could have told that he did not have time to get across the road without a collision, is guilty of contributory negligence." (Syl.)

But there, as stated in the opinion, the jury made a great number of findings, which in effect established the negligence of the plaintiff, notwithstanding there was strong evidence given on behalf of the plaintiff in relation to distance and other matters which the jury evidently disbelieved. Here we have no answers to special questions or any finding except the verdict, which is a general finding, on disputed facts in favor of the plaintiff.

In the case of *Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49, it was held in a collision case quite like the one at bar, except there were stop signs, that—

"When the facts relating to contributory negligence are of such character that reasonable minds might reach different conclusions thereon, it is a question of fact for the jury to determine." (Syl. ¶ 2.)

The case of *Stamps v. Railroad Co.,* 114 Kan. 477, 218 Pac. 1115, was where a streetcar was struck by a railroad train going at an excessive rate of speed beyond what one was required to anticipate. After the streetcar driver had stopped and looked and did not see any train, it was held that—

". . . he was not guilty of contributory negligence as a matter of law for not continuing to look for a train after determining it was safe to cross." (Syl. ¶ 1.)

In the opinion it was said:

". . . this court is bound by findings of fact returned by the jury and approved by the trial court, based on conflicting testimony." (p. 479.)

The case of *Hughes v. Motor Co.,* 111 Kan. 397, 207 Pac. 795, is almost exactly like the case at bar, except that the jury found certain facts by answering some special questions instead of doing so by its general verdict, as in this case, and the details of the rights and duties of the drivers of the two automobiles approaching the

intersection are carefully set out and discussed by the late Justice Mason, and in the third and fourth paragraphs of the syllabus it was held:

"The question whether the plaintiff in exceeding the statutory speed limit and in failing to see another car in time to prevent a collision was guilty of negligence contributing to his injury is held to have been one of fact, properly submitted to the jury.

"Where by ordinance a vehicle approaching a street intersection from one direction is given the right of way over one approaching it from another, the driver of an automobile from the disfavored direction is not required under all circumstances before attempting to cross to await the passage of every car he can see coming from the other direction which by any possible burst of speed might reach the crossing of their paths ahead of him. It is not negligence as a matter of law for a driver from either direction to undertake to cross the intersection ahead of a car which is at such a distance that he has ample time to get across provided the other does not exceed the highest speed he should reasonably anticipate. . . ."

In the very recent case of *Scheve v. Heiman,* 142 Kan. 370, 47 P. 2d 70, it was held that the question of contributory negligence was a question for the jury to determine, where there was sufficient evidence, if believed, to support such a finding, and in the opinion it was pointed out that a driver even without the right of way in his favor had the right to assume that he could continue on across the street and that the defendant would not exceed the speed at which he had reason to anticipate the defendant would approach and cross the intersection.

We think there was sufficient evidence in the case at bar, if believed by the jury, to support the general finding of the jury that the plaintiff was not guilty of contributory negligence.

Appellant also cites *Ferguson v. Lang,* 126 Kan. 273, 268 Pac. 117, and a number of decisions from other jurisdictions which do not change the situation as to the evidence in this case and the conclusion above stated, as applied to the finding of the jury thereon in its general verdict.

Appellant assigns error in the overruling of its motion for a new trial on account of the misconduct of the jury during its deliberations and that it rendered its verdict through prejudice. Five jurors testified on the hearing of the motion for a new trial to the effect that during their deliberations one of their number said it would not make any difference about the amount allowed as the insurance company would pay it anyway. There was a difference in the

testimony as to when this remark was made, whether before or after determining in favor of the plaintiff except as to the amount, and one of the jurors stated that the foreman of the jury said in reply that did not enter into their discussion.

*A. T. & S. F. Rld. Co. v. Bayes,* 42 Kan. 609, 22 Pac. 741, and many other cases are cited to show the disapproval of bringing into the case the question of defendant's carrying insurance and of the jury's furnishing evidence of similar matters, as in the Bayes case, where one juror told the others what the defendant railroad had paid him per rod for his hedge, which was the matter in controversy as to the worth of plaintiff's hedge, and the verdict was set aside for misconduct of the jury. Most of the cases cited with reference to defendant's being insured or insurance companies being liable are where the plaintiff deliberately and intentionally brought such matters out or hinted at them in the trial. Here we have not only the record showing nothing of the kind, but it is frankly admitted by counsel for defendant that the matter of insurance was not mentioned during the trial. The very mention of insurance by that one juror must be classed at least as an improper remark, but is it an impropriety sufficient in itself to require that the verdict be set aside without a showing of its having influenced the jury to the detriment or prejudice of the defendant? The case of *Newell v. City Ice Co.,* 140 Kan. 110, 34 P. 2d 558, was exactly like this one in that respect, and it was there said that it could not be held that the mention of insurance by a juror in the jury room had substantially affected the procuring of the verdict or the amount thereof. We think this is the correct rule when the plaintiff is in no way responsible for what was said in the jury room.

The judgment is affirmed.

HARVEY, J., not sitting.