No. 45,875

MILLIE V. DUNN, *Appellee and Cross-Appellant,* v. DELLA R. WHITE, *Appellant and Cross-Appellee.*

(479 P. 2d 215)

Opinion filed December 12, 1970.

*Harold E. Doherty,* of Topeka, argued the cause, and James E. Benfer, Lawrence J. Nelson and Larry T. Hughes, all of Topeka, were with him on the brief for the appellant and cross-appellee.

*Charles S. Arthur,* of Manhattan, argued the cause, and Charles D. Green, of Manhattan, was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

PRICE, C. J.: This is an action to recover for personal injuries sustained by plaintiff—a pedestrian—when struck by defendant's automobile.

The jury returned a verdict in favor of plaintiff for $28,575. Following a hearing on defendant's motion for a new trial the trial court found there was misconduct of the jury in discussing and considering matters relating to probable insurance coverage of defendant and attorney fees—resulting in prejudice to the substantial rights of defendant. The verdict was set aside as to damages and a new trial limited to the question of damages was granted.

Both parties have appealed.

Although other matters are raised and will be mentioned briefly —we consider the real and decisive questions to be—

1. Whether the record establishes such misconduct of the jury in arriving at the amount of the verdict as to show prejudice to the substantial rights of defendant, and—

2. Whether, if the finding of misconduct and resulting prejudice was correct—a new trial limited to the question of damages should have been granted rather than a new trial on all issues.

For reasons hereafter stated we are of the opinion that both rulings were correct and should be affirmed.

Defendant White was a school teacher in Alta Vista. She roomed in a house on the northeast corner of an intersection. Plaintiff, a 78 year old widow, was a long-time resident of Alta Vista and lived a few doors north of defendant—on the east side of the street. They were acquainted.

At about 8:30 on the morning of October 31, 1966 plaintiff left her home to walk to a neighbor's house on the west side of the street. In the meantime defendant came out of her house intending to drive to school. Her car was parked in the street in front of the house heading north. She discovered that during the night Hallo-

ween pranksters had jacked up the car and had done a thorough job of "soaping" the windows and windshield. She succeeded in pushing it back down on its wheels and attempted to scrape off the windows. While she was doing this the plaintiff walked by, and they spoke briefly. Defendant, being in a hurry to get to school, decided to drive to a nearby service station to have her windows cleaned.

In the meantime plaintiff had left the neighbor's house and walked south to an east-west sidewalk and then east a few feet to the edge of the street—intending to go to another neighbor's house to the south of the intersection. She saw defendant's car—which, as stated—was parked heading north. She saw no other cars. The street was coarse gravel or chat. At this moment defendant—instead of driving ahead north—proceeded to back her car in a southerly and then westerly direction. It struck plaintiff, knocked her down, and ran over her. She sustained a broken hip, a severely lacerated arm, and cuts and bruises to her head and other parts of her body. She was hospitalized at Council Grove and later in Manhattan.

This law suit was filed in May of 1967.

The pleadings contained the usual allegations and denials of negligence, and require no mention. And neither is the pretrial order of any significance for our purposes. The case was tried with the result as above stated.

At the hearing on defendant's motion for a new trial seven of the jurors testified concerning "proceedings" in the jury room. We summarize briefly.

Juror A—A verdict of $23,000 was first reached. Then followed a discussion that state law required a person to carry $50,000 insurance, and that after attorney fees were paid plaintiff would not have much left to live on. He did not recall discussion that "it was a fight between two insurance companies".

Juror B—When they went into the jury room someone "wondered out loud if this isn't between two insurance companies rather than between two parties," and it was suggested that the law required a person to carry "fifty or a hunded thousand". After they decided to hold for plaintiff they arrived at a figure of $23,000. Some thought it should be more. One juror suggested that attorney fees would be from "25 to 50 per cent". He, as foreman, then suggested that each put down a figure increasing or decreasing the $23,000,

and that the figures be "averaged". There was no agreement to be bound by the averaged figure. The jurors assumed "they could discuss anything they wanted to in the jury room".

Juror C—They arrived at the $23,000 figure as a "starting point." There was general discussion about attorney fees. Someone mentioned the amount of insurance a person was required to carry and they then decided to increase the $23,000 figure. Each wrote down a figure, and upon being averaged the ultimate verdict of $28,575 was reached and all agreed to that amount.

Juror D—When they first went in the jury room there was discussion of insurance coverage of defendant. The $23,000 figure was a "starting point". There was general discussion as to how much insurance a person had to carry. He knew that attorneys "get a big 'hook' out of everything". He recalled no agreement to be bound by the average of the figures each wrote down, and he had no idea they were not supposed to discuss insurance in the jury room.

Juror E—When they went into the jury room mention was made of insurance—$25,000 or $50,000, and that it was a fight between two insurance companies". They arrived at the $23,000 figure by each one writing down an amount, adding them and dividing by twelve. Some discussion was had as to attorney fees, and there seemed to be agreement that $23,000 was not enough. They then wrote down additional amounts pursuant to an agreement that the average would be the verdict—although he did not believe such agreement was binding.

Juror F—There was casual mention of insurance and attorney fees. The initial figure of $23,000 was considered to be too low, so each put down a figure and they "averaged it out". He did not recall a prior agreement to be bound by the quotient. All agreed to the ultimate figure reached.

Juror G—He recalled very little conversation about insurance or attorney fees. No one seemed to know how much insurance a person was required to carry. They rejected the $23,000 figure as being too low. Each wrote down another figure and they agreed beforehand to be bound by the average. After the higher figure was reached the foreman asked each juror "if it was all right" and "everybody agreed to it".

In a detailed memorandum opinion the trial court found on conflicting evidence that there was no quotient verdict. Such

finding—being supported—is not to be disturbed. It further found, however, that the jury was guilty of misconduct in discussing and considering matters relating to insurance coverage and attorney fees and that it must be concluded that the jury was affected by such extrinsic matters to the prejudice of defendant. The court further found that discussion and consideration of such matters did not touch or relate to the question of liability, that the determination of liability was fully sustained by the evidence and that such determination need not be vitiated by the jury's consideration of the matters in question. Accordingly, the motion for a new trial was sustained as to the issue of damages only, the verdict was set aside as to damages, and a new trial ordered on that issue only.

Defendant appealed, and contends the trial court erred in (1) denying her motions for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence, (2) denying her motion for judgment notwithstanding the verdict, and (3) granting a new trial on the question of damages only rather than a new trial on all issues.

Plaintiff filed a cross-appeal from the order setting aside the verdict as to damages and granting a new trial as to that issue.

Defendant's first two contentions are without merit. The evidence did not convict plaintiff of contributory negligence as a matter of law. The physical facts of defendant backing her car into the intersection when her vision was obscured were such as to present a proper question for the jury on the question of negligence of both parties. The record contains no complaints as to instructions, and the presumption is that the jury was properly instructed on all issues pertaining to liability.

Was this jury guilty of misconduct to the prejudice of defendant?

K. S. A. 60-259 provides that a new trial may be granted on all or a part of the issues when it appears that the rights of a party have been substantially affected because of misconduct of the jury. Concededly, a trial court has a wide discretion in the matter, and the rule is that an order granting or refusing a new trial will not be reversed unless a clear abuse of discretion is shown (*Timmerman v. Schroeder*, 203 Kan. 397, 400, 454 P. 2d 522). Matters as to there being insurance coverage of a defendant usually arise through references to such fact injected during the course of a trial, and the cases on the subject have been decided pretty much on a case-by-case basis—depending on the particular facts. (See the numerous

decisions cited in the opinion and dissenting opinion in *Bott v. Wendler*, 203 Kan. 212, 453 P. 2d 100).

During the course of this trial, however, the record shows no reference to any insurance coverage of defendant or the probability of the case being a "fight between two insurance companies". But the record of the hearing on the motion for a new trial does show that immediately after the jury retired there was discussion of insurance coverage of defendant and the fact that probably the case was a fight between two insurance companies. Where or how some of the jurors got the idea that the law requires a person such as defendant to carry a certain amount of liability insurance is not disclosed. Further, after the initial figure of $23,000 was reached, the jury proceeded to speculate not only on the insurance feature but on how large a "hook" would go to plaintiff's attorney in the event of a verdict in her favor. The function of a verdict in a case of this kind is to compensate for the injuries sustained—uninfluenced by extraneous matters here shown.

We recognize fully the argument often advanced that jurors are only "human", that in this day and age it is common knowledge that most people carry automobile liability insurance, and that in saying that jurors are prohibited from taking into consideration such matters "within the common knowledge of all mankind" courts are in reality merely "hiding their heads in the sand". It also is a matter of common knowledge that attorneys charge for their services and expect to be paid for their work the same as anyone else. Again, we say that no hard-and-fast rule can be laid down, and that each case must be decided on its particular facts taking into consideration the over-all picture presented.

Without further discussion we hold that under the facts shown here the trial court was correct in finding the jury was guilty of misconduct to the prejudice of defendant's substantial rights, and the verdict as to damages was properly set aside.

Did the trial court err in limiting the new trial to the question of damages rather than ordering a new trial on all issues?

As stated, the statute (K. S. A. 60-259) authorizes the granting of a new trial on all *or part* of the issues.

Plaintiff's position of course is that it was error to grant a new trial on any issue, and suggests that if the verdict is to be disturbed the court should have ordered a remittitur of damages in excess of the initial figure of $23,000 reached by the jury.

Defendant contends that here the issues of liability and damages were so intertwined and related that she is prejudiced by not having a new trial on all issues, citing a number of cases including *Parker v. Allen*, 171 Kan. 360, 233 P. 2d 514; *Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P. 2d 60 and *Timmerman v. Schroeder*, above.

Running through the decisions dealing with the question is the rule that where liability has definitely been established, that where it may be said the questions of liability and the amount of damages are separate and distinct, that where there is no indication the verdict was the result of a compromise involving the question of liability, and where it may fairly be said defendant will not suffer manifest prejudice—a new trial limited to the issue of damages is proper (*Schmidt v. Cooper*, 194 Kan. 403, 399 P. 2d 888). In ruling as it did the trial court stated—

"The matters of complaint here relate to the damage portion of the verdict only. The objectionable matters in the jury room did not touch or relate to the question of liability. There is no indication or suggestion that the determination on that issue was influenced thereby. In this case, the defendant was backing her automobile which she knew had the windows covered with wax or similar substance which obscured her vision and she did not look out for or see the plaintiff at plaintiff's place of travel until after the plaintiff had been struck by her autombile. The determination on the issue of liability by the jury is adequately sustained and is not and need not be vitiated by the jury's error in its consideration of outside matters."

Under the facts and the law the ruling of the trial court was correct. As to both the appeal and cross-appeal the judgment is affirmed.

FATZER, J., dissenting: For reasons hereafter expressed, I must respectfully dissent. No challenge was made in the district court or in this court that the verdict returned by the jury was excessive, and the record in fact discloses the plaintiff was quite seriously injured. The plaintiff has since died, and the record does not reveal whether her injuries may have shortened her life. No question of either parties' coverage by insurance was injected during the trial, nor was there any suggestion in the record that either party carried liability insurance. The jury's discussion as to insurance was only general as it affected the public and no one purported to discuss or to state that the defendant, Mrs. White, had insurance. This court has more than once held that speculation by a jury that the defend-

ant was insured did not constitute prejudicial error. In *Newell v. City Ice Co.*, 140 Kan. 110, 34 P. 2d 558, it was said:

". . . No juror testified that he was influenced by what seems to be random statements of possible liability insurance or by the additional statement that one juror said that such cases were taken by an attorney on contingent fees which reduced the net amount the plaintiff would receive. Here it was casually mentioned in the jury room that such companies as defendant were required to have liability insurance, and the juror did not know that defendant had such insurance, but possibly it had. It was merely 'idle talk back and forth' . . ." (l. c. 113.)

The court's decision in this case will make it extremely difficult to sustain a verdict for personal injuries. It may always be possible for the insurer, after an adverse verdict, to dig up evidence that members of the jury discussed attorney fees and insurance coverage in their deliberation notwithstanding the fact the evidence disclosed no insurance coverage, nor was insurance injected into the case by counsel. In *Anderson v. Thompson*, 137 Kan. 754, 22 P. 2d 438, it was said:

"Public policy forbids that after the jury has tried the case the court shall, on motion for new trial, proceed to try the jury. A verdict may not be impeached by an inquiry which reaches a juror's views or the reasons for those views (*L. & W. Rly. Co. v. Anderson*, 41 Kan. 528, 21 Pac. 588), or which reaches what influenced those views (*Matthews v. Langhofer*, 110 Kan. 36, 202 Pac. 634; *Jones v. Webber*, 111 Kan. 650, 207 Pac. 837; *Stone v. City of Pleasanton*, 115 Kan. 378, 223 Pac. 312). Besides that, the jury being what it is, jurors will act like human beings in the jury room, and will indulge in bluster and hyperbole and animated irrelevancies. Not only does the law presume a juror respects the obligation of his oath and votes his convictions, but generally he in fact does so; and due allowance must be made for some exuberance in jury-room discussion or the court must keep on granting new trials in important cases until a perfectly spiritless jury can be secured . . ." (l. c. 758.)

See, also, *Sphon v. Southern Kansas Stage Lines*, 142 Kan. 595, 50 P. 2d 1001, and *Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 436 P. 2d 369.

While the court's decision may tend to reduce liability insurance premiums, it will also tend to eliminate coverage of liability insurance procured by the people of this state to cover loss in damages for personal injuries or property damage which they may sustain. Moreover, it is submitted that jurors will continue to discuss the matter of attorney fees and of insurance coverage in their deliberation. It is general knowledge that most drivers today have liability insurance, and neither party to a lawsuit should be prejudiced by

matters which may be prompted by the juror's own experience and common knowledge of the affairs of mankind. Jurors are not expected to dispense with their common knowledge the moment the door of the jury room closes upon them. In fact, the Pattern Instructions for Kansas recognizes a juror's right to use in his deliberation his knowledge and experience possessed in common with mankind generally. (PIK 2.220.)

This case is to be distinguished from other cases in which extrinsic evidence was brought into the jury room and entered into the jury's deliberation. Here, there was no more than a discussion of the possibility of insurance and no one presumed to have any definite reliable information on that subject. No juror testified he was influenced by statements in the jury room of how much insurance the law required a person to carry, or by the additional statement that attorneys "get a big 'hook' out of everything," which would reduce the net amount the plaintiff would receive. There is nothing to indicate the verdict was based on the existence or nonexistence of any amount of insurance. In *Brown v. Hardin*, 197 Kan. 517, 419 P. 2d 912, it was said:

". . . There is no suggestion of extrinsic misconduct of any juror, no claim of personal knowledge on the part of any juror or no indication of outside influence as was true in cases relied on by plaintiff. Human nature being what it is, if every wild expression of opinion made in a jury room in the throes of hammering out a verdict could be made the basis for retrial jury verdicts could seldom be preserved. Such inquiries into the validity of jury verdicts, based on mental processes of the jurors, are foreclosed in Kansas, formerly by case law, now by statute. (See *Kincaid v. Wade*, 196 Kan. 174, 410 P. 2d 333; K. S. A. 60-441.)" (l. c. 523.)

With respect to the statement by the district court that the verdict was the largest one ever recovered in Wabaunsee County, it is suggested that Wabaunsee County jurors also know that the price of beefsteak has indeed gone up over the years.

In my judgment, the defendant failed to sustain affirmatively the burden of showing that matters relating to her probable insurance coverage and attorney fees resulted in prejudice to her substantial rights. Certainly, K. S. A. 60-454 has no application. I would reverse the judgment of the district court granting the defendant a new trial on any issue.

O'CONNOR, J., joins in the foregoing dissenting opinion.

O'CONNOR, J., dissenting: I join in the foregoing dissent, but wish to make these additional observations.

This case demonstrates the untenable position in which a jury is placed in the trial of a typical automobile negligence action. In one breath the jurors are told by the trial court they may use that knowledge and experience they possess with mankind generally. As suggested in the majority opinion, this would include the fact that most people carry automobile liability insurance and that attorneys are entitled to be paid for their services. Yet, in the next breath, the trial court, as well as the majority of this court, concludes that because the jurors discussed the possibility of insurance and the matter of attorney's fees there was misconduct prejudicing defendant's substantial rights. Such an approach, I submit, is unrealistic and places the law out of tune with the times. Liability insurance has become so commonplace as to constitute a way of life for the traveling public. Jurors cannot be expected to decide cases in a vacuum, wholly disregarding the facts of life in the business world of which they are a part. The result reached by the majority renders suspect virtually every verdict for damages in this type of lawsuit.

A study of the decisions cited in both the majority and dissenting opinions will disclose the difficulty encountered by the courts in attempting to resolve the elusive question of prejudice in a particular case where, either during trial or during the jury's deliberations, insurance reared its ugly head. In my view, the whole problem could be alleviated to a great extent if trial courts were required to inform the jury that whether or not a defendant carried liability insurance had no bearing on any of the issues of the case, including the amount of damages that might be awarded. An appropriate instruction in this vein would at least put the subject of insurance in its proper perspective. At the same time, prejudice would be effectively forestalled by emphasizing to the jurors that they must refrain from any consideration or speculation about insurance in arriving at a verdict.

FATZER, J., joins in the foregoing dissenting opinion.