No. 50,080

Fred Verren, *Appellee,* v. City of Pittsburg, *Appellant.*

(607 P.2d 36)

Opinion filed March 1, 1980.

*Leigh C. Hudson,* of Pittsburg, argued the cause, and *R. L. White,* also of Pittsburg, was with him on the brief for the appellant.

*Timothy A. Short,* of Pittsburg, argued the cause, and *Fred Spigarelli,* also of Pittsburg, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: A personal injury suit was brought against the city of Pittsburg by Fred Verren to recover for injuries suffered in a fall at a city park. Judgment was entered on a jury verdict. The Court of Appeals affirmed the judgment in an unpublished opinion. We reverse the judgment of the Court of Appeals and remand the case to the district court for further proceedings.

Now we consider the facts.

Mr. Verren and his four sons had gone to Lincoln Park. Two of the sons were playing in a ball game. Father and sons became separated. While looking for one of his spectator sons Mr. Verren came upon a large concrete slab in the park. He walked across the slab, stepped into a hole at the north edge and injured himself. He spent five weeks in a cast and several more weeks on crutches. The hole which caused his injuries was 12 to 14 inches deep. It had been there several years with knowledge of the city.

Suit was filed. Mr. Verren, as plaintiff, recovered a judgment for $5,600.00 against the city. The suit was under the comparative negligence law, K.S.A. 60-258a. The jury assessed the plaintiff's fault at 30% and the city's fault at 70%. The jury set the total amount of plaintiff's damage at $8,000.00. After deducting the 30%, or $2,400.00, as plaintiff's fault, judgment was entered by the court in favor of plaintiff for $5,600.00.

Defendant city filed a motion for new trial and in support of the motion charged jury misconduct and attached affidavits of two jurors to the motion. One affidavit stated:

"I served as juror in a case wherein Fred Verren sued the City of Pittsburg, Kansas; that the jury in its computation of damages specifically apportioned an amount included within its total amount of damages for plaintiff's attorney's fees; the jury in its computation of damages considered what percentage of fault would be attributed to the parties and then took this percentage into consideration in arriving at the damages to allow plaintiff a predetermined net recovery for his damages."

The second affidavit was almost identical in content and was signed by the foreman of the jury. When the motion for new trial came on for hearing plaintiff objected to the admission of the proposed testimony on the ground that it related to the mental processes of the jurors and was not admissible under our statutes. The trial court sustained the motion to exclude the evidence. A formal offer of proof was made. The motion for new trial was overruled. The statutes which govern are as follows:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined." K.S.A. 60-441.

"This article shall not be construed to (a) exempt a juror from testifying as a witness to conditions or occurrences either within or outside of the jury room having a material bearing on the validity of the verdict or the indictment, except as expressly limited by K.S.A. 60-441; . . ." K.S.A. 60-444(a).

Under these statutes we have held that a juror may not impeach his or her verdict on any ground inherent in the verdict itself; a juror may not divulge what considerations personally influenced him or her in arriving at the verdict or what reasoning personally led him or her to the final decision. *State v. Taylor,* 212 Kan. 780, 512 P.2d 449 (1973). More recently in *Crowley v. Ottken,* 224 Kan. 27, 31, 578 P.2d 689 (1978), it was pointed out that evidence is not admissible under K.S.A. 60-441 if it only pertains to the reasons a juror joined in the verdict. To be admissible the evidence must relate to extrinsic misconduct or to physical facts or occurrences within or without the jury room.

It appears from the Kansas cases that the line of demarcation between what is and what is not admissible has been difficult to

draw. After having considered the statutes, K.S.A. 60-441 and 60-444, Spencer A. Gard in 16 Kan. L. Rev. 125, 134 (1967), indicates that the statutes did not change the rules of evidence in this area which existed prior to the adoption of the civil code. So the general comment in VIII Wigmore on Evidence, § 2348, *et seq.,* (McNaughton rev. 1961), would seem to be helpful. There it is stated that a jury is required to perform one legal act, which act is encompassed in its verdict. It is the verdict and not the prior intentions which is taken as exclusively constituting that act. For this reason evidence as to jurors' motives, beliefs, misunderstandings, intentions and the like are regarded as immaterial in any inquiry concerning the validity of a verdict. The verdict speaks for itself and all other such matters inure in the verdict. This rule is necessary to assure the finality of verdicts and to protect against the corruption of jurors after discharge.

On the other hand there are certain formalities of conduct which a jury is required to follow. Failure to obey these essential formalities of conduct can invalidate the verdict. Evidence may be offered in such cases to impeach a verdict when the evidence will show actions of the jurors by which they have intentionally disregarded the court's instructions or violated one or more of the essential formalities of proper jury conduct. See VIII Wigmore on Evidence, § 2348.

In *Perry v. Bailey,* 12 Kan. 539, Syl. ¶ 3 (1874), this court holds:

"The general rule is, that affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification, that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as, that a juror was improperly approached by a party, his agent, or attorney, or that the verdict was determined by lot; but not to show any matter which does essentially inhere in the verdict, as that the juror did not assent to the verdict, that he misunderstood the instructions, or the testimony, or any other matter resting alone in the juror's breast."

In *Kincaid v. Wade,* 196 Kan. 174, 178-179, 410 P.2d 333 (1966), our court pointed out one of the reasons which compels us to have a rule against impeachment of a juror's verdict based on his or her mental processes, the reasoning by which he or she arrived at the verdict. In *Kincaid* it is stated:

"A verdict may not be impeached by (1) questions as to a juror's views—

conclusions, or (2) questions as to the reasons for those views—factors determining conclusions, or (3) questions which reach what influences those views—factors which influence the mental process in reaching such conclusion.

"It may be said that the mental process of a juror in reaching a verdict or the factors which influence the mental process cannot be inquired into for the purpose of impeaching a verdict.

"Public policy forbids the questioning of a juror on the above entitled matters for a very obvious reason, *i.e.,* there is no possible way to test the truth or veracity of the answers. In *McDonald v. Pless,* supra [238 U.S. 264], while considering the right to inquire into a jury's basis for reaching a verdict it was suggested that to permit the inquiry—

" ' " . . . would open the door to the most pernicious arts and tampering with jurors." "The practice would be replete with dangerous consequences." "It would lead to the grossest fraud and abuse" and "no verdict would be safe." ' (p. 268.)

"However, there is a contra matter of public policy to be considered. Improper conduct on the part of a juror is charged to the entire panel, as the jurors operate as a unit, and public policy demands that misconduct be discouraged and insofar as possible prohibited.

"This court has found it advisable to permit inquiry into physical matters and misconduct which comes to the attention of other members of the panel and may be verified or denied."

Such matters of misconduct by the jury, if they occurred in this case, may be uncovered and the truth and veracity of those testifying to such misconduct can be tested. The matters recited in the affidavits filed in the present case do not solely relate to the mental processes, nor do they rest alone in the mind of a juror or jurors. The matters set forth in the affidavits, if proven, would establish a conscious conspiracy by the members of the jury to disregard and circumvent the instructions on the law given by the court. If they did so the jurors would have violated their oaths as jurors. The juror's oath is so common to lawyers and judges it need not be iterated but each juror agrees under oath to follow the law in the instructions.

In this case the jurors were instructed as to the items they could consider in arriving at the amount of damages. Instruction No. 5 reads:

"In determining the amount of any recovery by plaintiff, you should allow him such amount of money as will reasonably compensate him for his injuries and losses resulting from the occurrence in question including any of the following shown by the evidence:

"a. Pain, suffering, disabilities, or disfigurement, and any accompanying mental anguish suffered by plaintiff to date.

"b. The reasonable expenses of ·necessary medical care and treatment received.

"c. Loss of time or income by reason of his disabilities."

The amount plaintiff had to pay for attorney fees was not one of the items of damage included, yet if the facts in the affidavits are proven an amount for attorney fees was included as part of the damages. This court specifically holds in *Dunn v. White,* 206 Kan. 278, 479 P.2d 215 (1970), that it is misconduct for the jury to add to the damages the amount of possible attorney fees which plaintiff will have to pay.

In addition to the foregoing this jury was instructed on comparative negligence. They were advised that the court was required to reduce the amount of damages which the jury determined by the percentage of fault that the jury found was attributable to plaintiff. In Instruction No. 7 the jury was also instructed:

"In arriving at the full damage figure for each party, you should not consider the question of fault. Do not reduce the damages by any percentage of fault."

Now, if we assume the truth of the affidavit, the jurors were guilty of misconduct in that they consciously disregarded the instructions of the court. They conspired together so as to circumvent the comparative negligence law. In total disregard of Instruction No. 7, they did consider the question of fault of plaintiff and increased the amount of actual damages to a fictitious figure which would result in giving the plaintiff the entire amount of his actual damage plus attorney fees. No evidence was introduced on the amount of attorney fees and such an item would have to be mere speculation.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court with instructions to hold another hearing on the motion for new trial. The testimony of the jurors as proffered was admissible. On remand if the evidence as a whole supports the allegations in the affidavits a new trial on the issue of damages only should be granted. On the other hand, if the evidence introduced on the motion for new trial is not sufficient to support the charge of jury misconduct the motion should be overruled and the judgment for $5,600.00 with interest should be reinstated.

As to any possible future trial limited to the issue of damages only, it appears to this court that liability and percentage of fault were definitely established at the first trial, that the questions as to

liability and the amount of damages are separate and distinct, that there is no indication the verdict was the result of a compromise involving the question of liability, and it may fairly be said defendant will not suffer manifest prejudice by limiting the trial to the question of damages only. That being true, any new trial limited to the issue of damages would be proper. *Dunn v. White,* 206 Kan. at 284; see also *Schmidt v. Cooper,* 194 Kan. 403, 399 P.2d 888 (1965).

All other issues raised on appeal and on the Petition for Review have been considered and we find as to them the judgment of the Court of Appeals should be and is hereby affirmed. The judgment of the Court of Appeals affirming the judgment of the district court on the question of possible jury misconduct is reversed. The case is remanded to the district court for further proceedings in accordance with what has been said herein.

MILLER, J., dissenting: I respectfully disagree with the majority opinion and therefore dissent.

My experience as a practicing lawyer and trial judge leads me to believe that as a rule Kansas jurors are extremely conscientious. I do not believe that the jurors in this case were any less conscientious than are our jurors generally.

These jurors were no doubt told that they could use their common knowledge and experience in evaluating the evidence and in arriving at their verdict. Such instructions are in general use. See PIK Civ. 2d 2.20 (1977).

During deliberations, it would not seem unlikely that one or more jurors would realize that the attorneys in the case do not work free of charge. Such knowledge is not secret, and it is unlikely that a representative jury could be selected from among persons lacking that common knowledge. It is one of the facts of life. The matter is fully and persuasively discussed in the dissenting opinions of Justices Fatzer and O'Connor in *Dunn v. White,* 206 Kan. 278, 284, 287, 479 P.2d 215 (1970). If verdicts are to be set aside because jurors discussed and considered attorney fees during deliberations, I suggest that most verdicts will be suspect and retrials will become almost automatic. Jurors cannot be expected to function in a vacuum, divorced from the knowledge shared by their peers.

Likewise, jurors can add, multiply and subtract. That they do

so, in arriving at what they decide is a just result, is not alarming and does not amount to misconduct.

The majority is directing the trial judge to invade the thought processes of the jurors, action forbidden by K.S.A. 60-441. The verdict in this case was modest. I agree with the distinguished judges of the Court of Appeals, and with the experienced trial judge, that the judgment entered on the verdict should be allowed to stand.

SCHROEDER, C.J., joins in the foregoing dissent.