(630 P.2d 1202)

No. 51,809

PAUL CORNEJO; MARGARET A. JOHNSON, Administratrix of the Estate of GILBERT L. THOMSON, JR., Deceased; and FLORENCE A. THOMSON, Individually and as Administrator of the Estate of GILBERT L. THOMSON, SR., Deceased, *Appellees,* v. STEVEN A. PROBST; ACID ENGINEERS, INC., and HOME INSURANCE COMPANY, *Appellants,* and THE STATE OF KANSAS, by and through O. D. TURNER, SECRETARY OF TRANSPORTATION, *Appellee.*

Petition for review denied September 18, 1981.

Opinion filed July 2, 1981.

*Christopher Randall* and *Eldon L. Boisseau,* of Turner and Boisseau, Chartered, of Wichita, for the appellants.

*Daniel J. Sevart* and *M. Ralph Baehr,* of Render & Kamas, of Wichita, for the appellee Paul Cornejo.

*Robert L. Howard* and *Richard C. Morris,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellee Margaret A. Johnson.

*Thomas D. Herlocker*, of Roberts & Herlocker, of Winfield, for the appellee Florence A. Thomson.

*Donald S. Simons*, of Topeka, for the appellee State of Kansas by and through O. D. Turner, Secretary of Transportation.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an appeal by two defendants from a jury verdict rendered in favor of plaintiffs in three personal injury actions, consolidated and tried in the District Court of Cowley County.

The appellees in this action are plaintiffs Paul Cornejo; Margaret A. Johnson, administratrix of the estate of Gilbert Thomson, Jr., deceased; Florence A. Thomson, individually and as administrator of the estate of Gilbert L. Thomson, Sr., deceased; and defendant State of Kansas, Department of Transportation. Appellants are defendants Acid Engineers, Inc., and its insurer Home Insurance Company.

On March 11, 1976, Gilbert Thomson, Jr., his father Gilbert Thomson, Sr., Fred Wilson and Paul Cornejo were riding in an automobile which collided with a truck operated by Steven Probst, an employee of defendant Acid Engineers, Inc., near the junction of U.S. 77 and K-15 in Cowley County. Gilbert Thomson, Jr., the driver of the car, was killed instantly. His father died seventeen days later after extensive medical treatment, during which time he suffered considerable pain from his injuries. Wilson and Cornejo were seriously injured.

Just prior to the collision, Probst was proceeding east on K-15 and intended to turn north when he reached U.S. 77. As he approached the junction, he observed the Thomson vehicle traveling in a westerly direction on the curved portion of K-15. K-15 had no stop signals at that point. Other evidence damaging to Probst was introduced which is unnecessary to review for purposes of this appeal.

The junction near the accident site was designed in 1931. The design was similar to many intersections built at the time. The defendant Department of Transportation was responsible for signing at the location. Its duties were mandated by the Manual on Uniform Traffic Control Devices. The 1971 edition of the manual was in effect at the time of the accident. Several of plaintiffs' witnesses and appellants' expert all admitted the manual contained no specific directives for a sign at the intersection.

The occupants of the car or the representatives of their estates

brought separate actions against the defendants and Steven Probst, who was later dismissed as a party. The actions were consolidated for trial. Prior to trial Wilson's claim was settled. The jury returned a verdict attributing 100% of the fault for the accident to defendants Acid Engineers, Inc., and Home Insurance Company. No fault was assessed against the defendant Department of Transportation or Gilbert Thomson, Jr. Paul Cornejo was awarded $400,000. Margaret Johnson, the administratrix of the estate of Gilbert Thomson, Jr., was awarded a total of $50,000. Florence A. Thomson, the surviving spouse and administrator of the estate of Gilbert Thomson, Sr., sustained the following amount of damages according to the jury:

> "Non-pecuniary damages
> for wrongful death .............................. $25,000.00
> "Pecuniary damages
> for wrongful death .............................. $25,000.00
> "Damages for pain and suffering
> and expenses for Gilbert A.
> Thomson, Sr., prior to death ....................... $425,000.00"

In a post-trial order, the trial court amended the verdict returned by the jury at the request of plaintiff Florence A. Thomson, administrator of the estate of Gilbert Thomson, Sr. Based upon the affidavit of the jury foreman, the court found that the foreman had committed a clerical error in completing the verdict form. Under the authority of K.S.A. 60-260(a) the trial court amended the jury verdict with respect to Florence Thomson to state " 'Pecuniary damages for wrongful death in the amount of $425,000.00; Damages for Pain and Suffering in the amount of $25,000.00.' "

Defendants Acid Engineers, Inc., and Home Insurance Company also filed a post-trial motion for new trial on various grounds, which was denied. In addition, their post-trial motion requesting the court to recall the jury to determine the validity of its verdict for the alleged reason that the jurors had improperly considered attorney fees and income tax consequences in arriving at the damage amounts was denied.

The issues to be decided on this appeal are: (1) whether the trial court abused its discretion in refusing to recall the jury to establish alleged misconduct of the jury in arriving at a verdict; (2) whether the verdict of the jury can be impeached on a showing that the jury considered income tax and attorney fees during its deliberations; (3) whether the trial court properly amended the jury verdict pursuant to K.S.A. 60-260(a); and (4) whether the trial

court properly instructed the jury concerning appellants' theory of the case.

The appellants contend that the trial court erroneously refused to allow recall of the jurors to establish that they considered attorney fees and income tax consequences in arriving at the damage awards. The arguments of the appellees in response to the first issue almost contradict the position they take with respect to the second issue. That is, appellees argue that the appellants erred by not submitting affidavits to the trial court describing their allegations of jury misconduct, but under the second issue, they claim that even if the affidavits had been available, they would not have been admissible because they would relate facts concerning the mental processes of the jurors. Because the parties have bifurcated the issues, they will be discussed separately here.

Appellants filed two post-trial motions. In one they sought to recall the jurors for a hearing to determine the validity or invalidity of their verdict. The stated authority for this motion was Supreme Court Rule No. 181, 225 Kan. lxxiv, and K.S.A. 60-441. The trial court overruled the motion for two reasons: (1) the motion was inadequate because it failed to comply with K.S.A. 60-259 regarding service of affidavits, and (2) the matters proffered related to the mental processes of the jury. The second motion filed by the appellants sought a new trial for several enumerated reasons. One of the asserted reasons was improper jury conduct and seemingly encompassed the allegations in the other motion. The trial court exercised its discretion and refused to grant the new trial.

Appellants now contend that their motion to recall the jurors was independent from the new trial motion and, accordingly, should not have been denied on the basis that they failed to comply with K.S.A. 60-259. Appellants' argument has little merit. The only purpose to be served by filing a motion for recall of the jurors would be to ultimately obtain a new trial on the basis of evidence presented at a hearing on the motion to support the allegation of juror misconduct. Therefore, the appellants had to comply with any requirements set forth in K.S.A. 60-259 for new trial motions in order to properly pursue their motion to recall the jurors.

The appellees and the trial court apparently believe that K.S.A. 60-259 required the submission of affidavits to support the mo-

tion to recall the jurors. Juror misconduct does, in fact, constitute a ground for a new trial. K.S.A. 60-259(*a*) *First.* K.S.A. 60-259(*c*) requires that a motion for new trial specifically state the alleged errors or grounds relied upon to support a new trial. Mere use of statutory language is insufficient. Evidence must be produced whenever the motion is grounded upon "exclusion of evidence, want of fair opportunity to produce evidence, or newly discovered evidence . . . ." K.S.A. 60-259(*g*). None of the other statutory grounds require the production of evidence. K.S.A. 60-259(*d*), upon which the trial court and the appellees focus, contains the requisites to be followed when affidavits are produced in support of the motion. However, the section does not require the submission of affidavits but rather regulates their use once a decision has been made to include them with the motion.

"When a motion for a new trial is based upon affidavits they shall be served with the motion. The opposing party has ten (10) days after such service within which to serve opposing affidavits, which period may be extended for an additional period not exceeding twenty (20) days either by the court for good cause shown or by the parties by written stipulation. The court may permit reply affidavits." K.S.A. 60-259(*d*).

Although the statute contains no explicit directives to produce affidavits with all post-trial motions for new trial, under the circumstances here there was very little way that the trial court could fairly consider the motion without an understanding of its factual basis. The alleged reason for the appellants' motion was not self-evident from the record of the case already before the trial court. Rather, the motion was dependent upon evidence extraneous to any of the regular trial proceedings. Thus, the mere assertion by defense counsel that the juror misconduct should invalidate the verdict provided an insufficient basis for a rational decision on the part of the trial court.

Appellants strenuously argue, however, that Supreme Court Rule No. 181 and the evidentiary constraints imposed by K.S.A. 60-441 and 60-444 effectively precluded them from obtaining affidavits prior to receiving authorization by the trial court.

Supreme Court Rule No. 181 provides:

"Jurors shall not be called for hearings on post-trial motions without an order of the court after motion and hearing held to determine whether all or any of the jurors should be called. If jurors are called, informal means other than subpoena should be utilized if possible."

Contrary to the position taken by appellants, by its very language Rule No. 181 does not contemplate an independent post-trial motion for the calling of jurors. Rather, it is a procedural aid when other post-trial motions are filed. It contains no prohibitions about interviewing jurors after trial. Indeed, Supreme Court Rule No. 169, 225 Kan. lxxiii-lxxiv, recognizes that the jurors may, if they wish, discuss the case with the attorneys after trial and apprises jurors of their right to report any harassing activities of counsel to the trial court.

The provisions of K.S.A. 60-441 and 60-444 relate to the question of what evidence in the form of affidavits may be received with respect to juror deliberations. These provisions are more pertinent to the second issue, and will be addressed thereunder.

The parties cite three cases to support their respective contentions. They are *State v. McDonald,* 222 Kan. 494, 565 P.2d 267 (1977); *State v. Griffin,* 3 Kan. App. 2d 443, 596 P.2d 185 (1979); and *Gannaway v. Missouri-Kansas-Texas Rld. Co.,* 2 Kan. App. 2d 81, 575 P.2d 566 (1978). Appellants contend these cases compel a finding that the trial court abused its discretion by its refusal to call the jurors to a hearing concerning their deliberations.

After the trial in *State v. McDonald,* McDonald's attorney learned of the existence of "exceedingly vituperative publications" that could have adversely prejudiced defendant. Defendant's motion for new trial was partially sought on the basis of this prejudicial pretrial publicity. At oral argument, defense counsel stated that he had not interviewed the jurors because he thought he should first obtain the consent of the trial court, and asked permission for both trial counsel to discuss the possible prejudicial pretrial publicity with the jurors. This motion was denied and the trial court further concluded that the publication had absolutely no effect on the trial. The Supreme Court held the trial court erred. The court found that an inquiry into whether the jurors were aware of the inflammatory publication, read it, and discussed it, was relevant and not proscribed by K.S.A. 60-441. The Supreme Court opined that the trial court should have granted counsel leave to interview the jurors. The court concluded:

"While there is nothing in our law to prohibit counsel from interviewing jurors after the conclusion of trial, leave of court is required before jurors may be called

for hearings on post-trial motions. Supreme Court Rule No. 181 (220 Kan. lxviii). We think counsel pursued a proper course in seeking permission of the court to interview jurors. When in doubt in an area such as this, counsel cannot be faulted for seeking guidance from the court." 222 Kan. at 497.

*McDonald* would seem to provide some support for the appellants' position. However, it is distinguishable to the extent that the trial court had before it concrete evidence of "exceedingly vituperative publications" against the defendant, which the Supreme Court determined would have been highly relevant in determining whether the jury's verdict was influenced by the pretrial publicity. In contrast, the trial court in this action had only the uncorroborated view of defense counsel that the jury may have considered attorney fees and income taxes in computing the damage amounts. The allegations of defense counsel were controverted by another trial counsel who testified at the motion hearing that he and other counsel had discussed the case with the jurors and did not receive the impression that any improper factors had been considered.

In *State v. Griffin,* 3 Kan. App. 2d 443, defense counsel sought permission under Supreme Court Rule No. 181 to subpoena certain jurors to ascertain whether or not one or more of the jurors had failed to adhere to the limiting instructions of the trial court concerning a newspaper article which the trial court had already determined would have a prejudicial effect if the jury became aware of it. Defense counsel suspected the violation based upon its conversation with a juror in the presence of other counsel and sought the order because of the juror's reluctance to further converse with counsel.

This court determined that such an inquiry was not prohibited by K.S.A. 60-441 and that an inquiry was the only method by which defendant could demonstrate he was not afforded a fair trial due to jury misconduct. There was also evidence that one juror when polled initially stated that the verdict was not his, but upon questioning by the court responded that it was. When the trial court asked whether any of the jury members had been unable to follow its instructions, none of the jurors replied that they had not been able to do so. Accordingly, this court found that the trial court abused its discretion in denying defense counsel's request to interview the jurors.

*Griffin,* like *McDonald,* may provide some support for appellants, but it also is distinguishable in several ways. First, defense

counsel's asserted need to invoke Supreme Court Rule No. 181 was readily apparent in *Griffin* when counsel reported to the trial court that one of the jurors had refused to discuss the case with him after their initial conversation. Here, there was no indication that any of the jurors refused to discuss the alleged misconduct with defense counsel. Further, the *Griffin* conversation was held in the presence of other counsel. In this action, several counsel for various parties discussed the situation with the jurors independently and arrived at different interpretations of the jury deliberations. Additionally, in *Griffin,* the trial court had taken notice of the prejudicial nature of a newspaper article which appeared the day of the trial and had, in fact, given a limiting instruction on the subject. Unlike *Griffin,* where the trial court was able to glean at least part of the factual basis for defense counsel's motion from the record, the trial court in this action was provided no similar factual information upon which to rule. There is no specific indication from the record that the jury apportioned a specific amount for attorney fees or for income taxes when it arrived at the damage award.

Finally, appellants' reliance on *Gannaway* is misplaced because of the many distinguishing factors discussed herein. In *Gannaway* this court decided that the trial court did not err in refusing to receive testimony that the jury failed to follow its instruction on reducing the amount of anticipated future loss to its present worth. Defense counsel subpoenaed the jury foreman without first obtaining leave of court, in violation of Supreme Court Rule No. 181. This court further found the proffered testimony would have been inadmissible under the terms of K.S.A. 60-441 because it involved the mental processes of the jurors, and concluded:

"The case at bar, however, is not one in which it is apparent from the facts and circumstances that the verdict resulted from jury disregard of the instructions. Only by questioning the jurors could the verdict be impeached, and that cannot be done." 2 Kan. App. 2d at 84.

*Gannaway* does stand for the proposition that counsel cannot subpoena a juror without prior court authority, as required by Rule No. 181. It does not, however, preclude obtaining affidavits from jurors who are willing to provide them. Here counsel made absolutely no showing whatsoever that it was not possible to submit some evidentiary bases to support their allegations of

juror misconduct. *Gannaway* simply does not reach the question as to whether a trial court abuses its discretion by refusing to subpoena jurors pursuant to Rule No. 181 when no affidavits alleging juror misconduct are submitted.

The trial court's rationale for refusing defense counsel's request to call the jury for hearing is evident from the following pronouncement it made from the bench:

"I asked counsel as to how the Court was to determine whether or not there was sufficient cause to bring the jury back which is clearly an unusual event, an extraordinary event in trial procedure, to bring a jury back and question them with regard to anything they did during the trial. In the absence of Affidavits, the Court is left with nothing to rely on but the statements of counsel and the Court has no reason to doubt the statements of counsel, but, nonetheless, they don't constitute Affidavits in the form required by the statute or of the nature required by the statute, and you have, of course, the problem that . . . other attorneys have also conversed with them [jurors] on the subject of their deliberations and come away apparently with a different interpretation of what took place, what influenced their deliberations, what evidence they did or did not consider and how any particular item or supposition or anything else weighed with them. I see no way that the Court could, by weighing the statements of counsel, make a rational determination as to whether or not the jury should be returned for further proceedings in which it would be determined by inquiry by the Court or counsel as to whether or not they had improperly conducted their deliberations or considered things which they should not have considered or misunderstood the Instructions."

Had the trial court received something more substantive regarding the alleged misconduct, it could possibly be found that it abused its discretion in refusing to recall the jurors as provided in Supreme Court Rule No. 181. However, in view of the inadequate proffer made at oral argument on the motion, it is not clearly obvious that the trial court abused its discretion in refusing to call the jurors.

Appellants next argue that the trial court erroneously determined that receipt of evidence concerning the alleged consideration by the jury of attorney fees and income taxes related to the mental processes of the jury, and, consequently, was inadmissible under K.S.A. 60-441 and 60-444. K.S.A. 60-444 permits receipt of evidence from a juror which has "a material bearing on the validity of the verdict," with the exception of the explicit limitations in K.S.A. 60-441 which include the mental processes of the jurors. The threshold question in this case, then, is whether the evidence appellants sought to introduce involved the mental processes of the jury. *Johnson v. Haupt,* 5 Kan. App. 2d 682, 623

P.2d 537 (1981). If the evidence does not violate K.S.A. 60-441 and demonstrates juror misconduct, a new trial will still be warranted only if appellants' rights have been substantially prejudiced. The burden of proof is upon the appellants who claim the prejudice. *State v. Fenton,* 228 Kan. 658, 620 P.2d 813 (1980); *Johnson v. Haupt.* Kansas has long recognized that the addition of possible attorney fees to the amount of damages constitutes jury misconduct. *Verren v. City of Pittsburg,* 227 Kan. 259, 607 P.2d 36 (1980); *Dunn v. White,* 206 Kan. 278, 479 P.2d 215 (1970). Further, it is improper for a jury to consider federal or state income taxes in making a damage award. *Spencer v. Eby Construction Co.,* 186 Kan. 345, 350 P.2d 18 (1960); *Rediker v. Chicago, Rock Island, Pacific Rld. Co.,* 1 Kan. App. 2d 581, 571 P.2d 70, *rev. denied* 225 Kan. 845 (1977).

Appellants allege that the jurors considered both attorney fees and taxes, and, accordingly, they submit the trial court should have received evidence about this alleged misconduct as it does not violate K.S.A. 60-441. While all parties seemingly acknowledge that under some circumstances evidence concerning jury consideration of attorney fees and income taxes may be proper, appellees contend that it is necessary to demonstrate that a specific amount of the damage award was allocated for attorney fees and for taxes, and that appellants failed to so demonstrate.

In their written motion, appellants Acid Engineers, Inc., and Home Insurance Company stated:

"That it is believed that either clear confusion existed as to instructions given and/or that jurors considered evidence not introduced during the course of the proceedings for this Court."

At oral argument on the motion, their counsel stated:

"I believe that first juror that I did visit with, however, indicated to me that in these cases they considered two things which were not introduced into evidence. Those two things being, one, that income tax would be paid on the verdicts; and, two, that attorneys' fees would have to be paid and that that was considered, discussed in the jury room at the time of rendering these verdicts, and as I understand it, taken into consideration."

Counsel for another party informed the court, however, that he did not share defense counsel's impression of what happened in the jury room.

All parties rely upon *Verren v. City of Pittsburg,* 227 Kan. 259, to support their respective contentions. This is one of the recent

pronouncements of our Supreme Court on the subject and sets forth a few explicit guidelines to be followed. In *Verren* the defendant supported his motion for new trial on the ground of juror misconduct with affidavits of two jurors. One affidavit stated that the jury apportioned a specific amount of the total damage award for the plaintiff's attorney fees. The affidavit also contained an assertion that the jury considered the percentage of fault attributable to the parties and then considered that percentage in arriving at the damages. The second affidavit was virtually the same. The Supreme Court concluded that the trial court had erroneously determined that the proposed testimony was inadmissible under K.S.A. 60-441 and 60-444(*a*). The court observed that it had always held that a verdict could not be impeached by a juror on any ground inherent in the verdict. Rather, evidence would be admissible if it related "to extrinsic misconduct or to physical facts or occurrences within or without the jury room." 227 Kan. at 260. The court continued:

"[T]here are certain formalities of conduct which a jury is required to follow. Failure to obey these essential formalities of conduct can invalidate the verdict. Evidence may be offered in such cases to impeach a verdict when the evidence will show actions of the jurors by which they have intentionally disregarded the court's instructions or violated one or more of the essential formalities of proper jury conduct." 227 Kan. at 261.

The court concluded that the proffered evidence before the trial court did not relate solely to the mental processes of the jury. Instead, if the allegations were proved, the jury could be found to have consciously conspired to "disregard and circumvent the instructions on the law given by the court," because the jurors were not instructed to include attorney fees as an item of damages. 227 Kan. at 262. The court cited *Dunn v. White,* 206 Kan. 278, 479 P.2d 215 (1970), where juror misconduct was found because the jury added an amount for attorney fees to the damages.

The interpretation afforded *Dunn v. White* in *Verren,* and a review of *Dunn v. White,* indicate that not every mention of attorney fees would necessarily constitute juror misconduct. However, misconduct is clearly to be found whenever a specific amount is added onto the award for inappropriate items of damage, *e.g.,* attorney fees and income taxes.

Here the jurors were instructed as to the precise elements of damage that could be awarded to the various plaintiffs. Amounts

for attorney fees and income taxes were not included as items of damage.

Based upon the legal authorities referred to above, it would be permissible for the trial court to admit evidence that the jurors had specifically included in their damage awards amounts for attorney fees and income taxes. The problem in this case, however, is that the proffered testimony does not clearly demonstrate just what the jurors did with respect to attorney fees and income taxes to be able to determine whether their actions could have constituted misconduct. The assertions of the appellants were deficient. Unlike *Verren,* where there were affidavits that expressly stated the jury included attorney fees in the amount of the award, nothing conclusive was presented to the trial court in this action.

Based upon the application of foregoing legal authority to the facts of this case, we find that appellants have failed to show a clear abuse of discretion in the trial court's refusal to grant affirmative relief on these two motions.

The appellants argue that the trial court erroneously amended the verdict returned by the jury. After the jury returned its verdict, the court asked whether it was the verdict of all jurors. The members of the jury responded affrmatively. Upon request of defense counsel, the trial court then polled the members and each responded that the verdict was his or hers. The jury was then discharged.

After trial, plaintiff Florence Thomson filed a motion requesting that the trial court amend the jury form with respect to the damages awarded her as the surviving spouse and administrator of the estate of Gilbert L. Thomson, Sr. The jury had awarded the plaintiff $25,000 as non-pecuniary damages for wrongful death, $25,000 as pecuniary damages for wrongful death, and $425,000 as damages for pain and suffering and expenses of Gilbert Thomson, Sr., prior to death. With this motion, plaintiff submitted the affidavit of the jury foreman who stated that he inadvertently transposed the figure of $25,000 on the middle line of the verdict form designated as pecuniary damages with the figure $425,000 on the third line of the form designated as damages for pain and suffering. In response to this motion, the trial court entered an order on the basis of K.S.A. 60-260(*a*) correcting what it deemed a clerical error in the verdict. The court specifically

found the motion and affidavit could properly be considered by the court as they did not constitute an inquiry into the mental processes of the jurors. The judgment was amended to read: " 'Pecuniary damages for wrongful death in the amount of $425,000; Damages for Pain and Suffering in the amount of $25,000.' "

Appellants argue this action of the trial court was prohibited by the provisions of K.S.A. 1980 Supp. 60-248(*g*) and *Traylor v. Wachter,* 227 Kan. 221, 607 P.2d 1094 (1980). The Supreme Court there found that such a correction "must occur before the jury is discharged and with the assent of the jury." 227 Kan. at 223.

We find that *Traylor v. Wachter* is controlling, and the case is remanded with directions to reinstate the jury verdict as originally entered by the trial court.

Appellants finally contend that instruction No. 14 "was insufficient concerning the duty of the State of Kansas to exercise good judgment in signing the intersection." They assert that this objection was adequately raised in the court below when they requested that the court give their proposed instructions No. 18 and 19, instead of instruction No. 14. Based upon a review of the transcript, the objections entered by the appellants at trial are not precisely the same as appellants characterize them in their brief.

We find that the appellants waived error with respect to the instructions because they failed to distinctly state "the matter to which he or she objects and the grounds of his or her objection" unless the instruction is clearly erroneous. K.S.A. 60-251(*b*). We find that the instruction was not clearly erroneous.

Judgment is affirmed as modified, with directions to reinstate the jury verdict as originally entered.

ABBOTT, J., concurring: I agree that *Traylor v. Wachter,* 227 Kan. 221, 607 P.2d 1094 (1980), requires this court to order the trial court to reinstate the jury verdict. Such a result, however, has the potential of being a gross miscarriage of justice in that it could result in a financial loss to the plaintiff unless the Internal Revenue Service is willing to take a more reasonable position than do the Kansas appellate courts. By not allowing the clerical error to be corrected, $400,000 of the verdict may be subject to federal estate and state inheritance taxes.

I am convinced that the better rule is to allow a purely clerical error in a jury verdict such as appears in this case to be corrected

pursuant to K.S.A. 60-260(*a*). Such a result would have no effect on the defendant in this case. The defendant does not contend that a clerical error was not made, nor does defendant contest the amount awarded to plaintiff. Indeed, defendant's only argument is that the clerical error is an indication of confusion on the part of the jury. Defendant will be required to pay the same amount to the same party, but the judicial system will inflict on the widow economic harm that was not intended by the jury or by inheritance tax laws. Despite *Traylor v. Wachter,* it is my opinion that the legislature intended an error such as we have before us to be correctable pursuant to K.S.A. 60-260(*a*).

I also concur that the trial judge did not abuse his discretion in refusing to allow the defendant to call the jurors in an effort to show misconduct on their part. I base my opinion on the fact that counsel for the defendant stated the jurors "may" have considered improper elements. I am unable to find a positive statement in the record that misconduct did, in fact, occur; thus, I agree that the trial judge properly refused to allow the jurors to be called in the absence of an affidavit or oral assurance of counsel that such misconduct did, in fact, occur.