No. 48,587

THERESA L. YOCUM CROWLEY, *Appellant,* v. ROYLENNE K. OTTKEN, *Appellee.*
(578 P.2d 689)

Opinion filed May 6, 1978.

*David L. McLane,* of Gendusa, McCurdy, and McLane, of Pittsburg, argued the cause, and was on the brief for the appellant.

*Charles L. Davis, Jr.,* of Gray, Freidberg, Davis, and Unrein, of Topeka, argued the cause, and *J. Franklin Hummer,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover damages for personal injuries arising from a collision between a motorcycle and an automobile at an intersection near Lake Shawnee in Shawnee county. The plaintiff, Theresa L. Crowley, was a passenger on a motorcycle driven by Charles Brockman. The defendant, Roylenne K. Ottken, was the driver of the automobile. The case was tried to a jury which brought in a general verdict in favor of the defendant. The plaintiff Crowley has appealed to this court claiming trial errors.

The factual circumstances which brought about the collision were not greatly in dispute. The accident occurred on a lake entrance road which begins at a T-intersection with Croco road and runs westerly toward Lake Shawnee. Approximately 500 feet west of Croco road, the lake entrance road forms a "Y" shaped intersection with two roads which run to the right and left. The posted speed limit in the area is 25 miles per hour. The intersection presented a very dangerous situation because there were no traffic control devices to warn or direct operators of vehicles as they approached the intersection.

Just prior to the collision, the Brockman motorcycle was following another motorcycle driven by Frank Zeckmeister heading

in a westerly direction toward the "Y" intersection. At the same time, the defendant was driving her automobile at a slow speed approaching the intersection from a northwesterly direction. The Zeckmeister motorcycle reached the intersection ahead of the Brockman vehicle and was able to clear the intersection on the road extending to the southwest. The speed of the Brockman motorcycle, on which the plaintiff was riding, was estimated by some witnesses at 35-to-45 miles per hour. Witnesses testified that after the Brockman motorcycle turned onto the entrance road off Croco road, it accelerated substantially prior to the moment of impact. Defendant Ottken's version of the accident was that, as she approached the intersection, she saw motorcycles approaching from the east. After the Zeckmeister motorcycle crossed in front of her, she entered the intersection and then noticed the Brockman motorcycle swerving. She stopped in the intersection, leaving the motorcycle enough room to pass on either side. The motorcycle was unable to avoid the stopped automobile and the collision occurred.

The first point raised on appeal is that the trial court erred in submitting the issue of the plaintiff's contributory negligence to the jury. The instructions on the subject of contributory negligence were in the language of PIK Civil 4.01 and 8.91. The plaintiff has no objection to these instructions as a correct statement of the law. She maintains that they should not have been given at all. The issue is whether reasonable minds could differ as to the negligence of the plaintiff as a passenger on the motorcycle.

Under all the facts and circumstances, we have concluded that the contributory negligence of the plaintiff was an issue of fact properly submitted to the jury. There was testimony to the effect that the plaintiff observed the defendant's vehicle as it approached the intersection from the right. The posted speed limit was 25 miles per hour. Witnesses estimated the speed of the motorcycle to be as high as 35-to-45 miles per hour. The record does not indicate that the plaintiff warned the driver to slow down until it was too late to avoid the collision. Under all the circumstances we cannot say that the trial court erred in submitting the issue of the defendant's contributory negligence to the jury.

The second point on appeal is that the trial court erred in giving an instruction on sudden emergency. In *Zell v. Luthy*, 216 Kan.

697, 533 P.2d 1298 (1975), we stated that emergency circumstances are a proper matter for argument by counsel and that an instruction on sudden emergency is not required where negligence, burden of proof, and causation have been properly defined in the instructions. In *Zell* we refused to reverse the case because the trial court had given an emergency instruction as we were unable to say that the plaintiff had been prejudiced by the instruction. We have reached a similar conclusion in the case now before us. Although an instruction on sudden emergency should not have been given, it appears to us that under all the circumstances such an instruction was not prejudicial error as a matter of law in this case. We, therefore, decline to reverse the case on this point.

Points three and four have been combined in the brief. The substance of these points is that the trial court should have instructed the jury that the defendant was negligent as a matter of law. In our judgment the trial court properly submitted the issue of the defendant's negligence to the jury. From the evidence presented in the case, the jury might well have found that the cause of the collision was the excessive speed of the motorcycle, causing the driver to swerve, lose control, and collide with the defendant's vehicle.

The last point raised on the appeal is that the trial court should have granted a mistrial or a new trial because the verdict of the jury was not unanimous in that one of the jurors was in disagreement with the verdict rendered in favor of the defendant. On the last day of the trial, September 24, 1974, the case was submitted to the jury, and after deliberating two hours, the jury returned a general verdict in favor of the defendant, Ottken. Plaintiff's counsel requested that the jury be polled. The reporter asked each of the jurors, "Is this your verdict and are you satisfied therewith?" Upon inquiring of juror Dorthea Mercer, she replied, "No." Following further inquiry to the juror and a discussion by court and counsel, plaintiff's counsel stated that he thought that, in the alternative, either further instructions should be given and the jury sent back to deliberate or the record should indicate a hung jury. Plaintiff's counsel never actually moved for a mistrial. The trial court then gave the jury an additional instruction patterned after PIK Civil 10.20: Deadlocked Jury, as found in the bound volume of PIK Civil. It is clear that plaintiff's counsel

stated he had no objection to the giving of the instruction. The jury again retired and, after an additional brief deliberation, returned to the courtroom with a verdict in favor of the defendant. At the plaintiff's request, the reporter again polled the jury and this time all twelve jurors, including juror Mercer, stated that it was his or her verdict.

Six days following the rendition of the verdict, the plaintiff filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was accompanied by an affidavit of juror Mercer which stated in substance that the verdict in favor of the defendant rendered on September 24 was not her verdict, that she did not agree with it at that time nor does she now, and that she went along with the verdict because she felt that it would do no good to maintain her position favorable to the plaintiff. The trial court refused to admit the juror's affidavit and overruled the plaintiff's posttrial motions. The trial court found the affidavit of juror Mercer inadmissible under the provisions of K.S.A. 60-441. That section provides in substance that, upon an inquiry as to the validity of the verdict, no evidence shall be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or concerning the mental processes by which it was determined. The trial court found specifically that juror Mercer could not be permitted to impeach her own verdict on grounds inherent in the verdict itself, and that she could not divulge what considerations influenced her in arriving at her verdict or the reasoning on which she based her decision. The trial court further found that the juror could not impeach the verdict in which she expressly joined by the giving of testimony as to the reasoning employed by the jury in reaching its decision or what may have influenced the mental processes by which she and her fellow jurors arrived at their verdict.

The ruling of the trial court is supported by a consistent line of decisions in this state beginning in 1872. An early case on the subject is *State v. Home,* 9 Kan. 119 (1872), where this court held that affidavits of jurors are not admissible to impeach their verdict on any ground essentially necessary to consider in making up the verdict. In *Home,* on motion for a new trial, the defendant offered to read the affidavits of two jurors who tried the case. These affidavits stated in substance that the affiants did not believe the

defendant guilty, but that they believed that if he was acquitted, great bodily harm would be inflicted on him by a mob, and that it would be better for him to be found guilty than to run a risk of mob violence. It was held that the trial court properly refused to permit these affidavits to be read in support of the motion for a new trial.

More recently in *State v. Taylor,* 212 Kan. 780, 512 P.2d 449 (1973), it was held that a juror may not impeach his verdict on a ground inherent in the verdict itself; he may not divulge what considerations influenced him in arriving at his verdict or the reasoning on which he based his decision. In *Taylor* the verdict of guilty was read at 11:57 a.m. on June 23, 1971. The jury was polled and all agreed that it was a unanimous verdict. That same day at 1:30 p.m., one of the jurors appeared to testify before the court and stated that she had voted for the guilty verdict and that she had answered in the affirmative when the jury was polled. She further testified that her fellow jurors persuaded her to vote guilty but that she knew she was wrong. At the hearing on the motion for a mistrial, she stated that the verdict was not hers. The defendant contended on the basis of this testimony that a mistrial or new trial should have been declared. We held that the testimony of the juror was inadmissible to impeach the verdict, citing many cases in support of the court's position. In the opinion it is stated that the mere fact a juror who joins in a verdict later professes to believe the defendant innocent is no basis for ordering a mistrial. The factual circumstances in the present case are quite similar to those in the cases discussed above. Here juror Mercer's testimony did not relate to extrinsic misconduct or to physical facts or occurrences within or without the jury room but only to the reasons she joined in the verdict. The trial court did not err in refusing to grant a mistrial or a new trial.

The judgment of the district court is affirmed.

MCFARLAND, J., not participating.