No. 76,506

STATE OF KANSAS, *Appellee*, v. ADRIAN M. FRANKLIN, *Appellant*.

(958 P.2d 611)

Opinion filed April 17, 1998.

*Mark T. Schoenhofer,* of Wichita, argued the cause, and *Kurt P. Kerns,* of Wichita, was with him on the brief for appellant.

*Doyle Baker,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Adrian Franklin was convicted of voluntary manslaughter (K.S.A. 21-3403), a severity level 3 person felony, and sentenced to 51 months' imprisonment. He appeals from the trial court's denial of his motion for a new trial which was predicated upon a claim that the jury had failed to reach a unanimous verdict.

The underlying facts of the crime are not involved in the issue presented and will be highly summarized. On June 4, 1995, a confrontation occurred between defendant and the victim, Namon Goff, in a Wichita restaurant. The two men left the restaurant and the incident continued in the parking lot. As the victim was enter-

ing his car, defendant shot him three times, once in the back of the head, once in the back of the shoulder, and once in the lower back. Defendant was charged with second-degree murder. He claimed to have shot the victim in self-defense.

The jury was instructed on the charged crime of intentional second-degree murder as well as the lesser included offenses of unintentional second-degree murder and voluntary and involuntary manslaughter. The foreperson marked and signed the verdict form stating, "Guilty of voluntary manslaughter." No irregularities in the execution of the verdict form are claimed. After the verdict was announced, the jury was polled and each juror affirmatively stated that this was his or her verdict.

A week after the verdict had been returned, defendant filed a motion for a new trial asserting that a juror had advised defense counsel that there had been confusion over the instructions. At the hearing, two jurors were called as witnesses (one of whom was the foreperson). The testimony of a third juror was proffered by the defense. The State objected to the calling of the jurors as being violative of the limitations set forth in K.S.A. 60-441. The court overruled the objection "to allow the defendant to make his record."

Defendant contends the verdict was not unanimous because foreperson Burns and juror Foster testified they believed the instruction required the jury to reach a unanimous verdict. They felt the defendant was not guilty, as he had acted in self-defense. As their position was the minority view, they agreed to the guilty verdict on the voluntary manslaughter lesser included offense in order to reach the required unanimous verdict. The State proffered the testimony of another juror who would testify that there was some confusion over the instructions, but "overall . . . they were not a stumbling block."

At the conclusion of the hearing, upon review of all 19 jury instructions, the trial court denied the motion, finding no error requiring a new trial. Although it had permitted defense counsel to make a record of the jurors' testimony, the court held that pursuant to K.S.A. 60-441, it was not proper to "go behind the verdict of the jury to test the thought processes of the jury in arriving at that

verdict." The court found that the "verdict was within the realm of the law and the evidence" and that "[t]here was under the evidence reasonable grounds for the jury to reach the conclusion that was reached."

## STANDARD OF REVIEW

The granting of a new trial is a matter which lies within the sound discretion of the trial court, and appellate review of a trial court's decision denying a new trial is limited to whether the trial court abused its discretion. *State v. Griffin*, 262 Kan. 698, Syl. ¶ 2, 941 P.2d 941 (1997).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

## STATUTES

Two statutes are involved in the issue presented. K.S.A. 60-441 provides:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

K.S.A. 60-444(a) provides:

"This article shall not be construed to . . . exempt a juror from testifying as a witness to conditions or occurrences either within or outside of the jury room having a material bearing on the validity of the verdict or the indictment, except as expressly limited by K.S.A. 60-441 . . . ."

## JUROR TESTIMONY

The basic question presented is whether the trial court correctly held that the testimony elicited as to confusion over the instructions was inquiry into the mental processes of the jurors in the reaching of the verdict as prohibited by K.S.A. 60-441 or whether

such testimony was juror misconduct having a material bearing on the validity of the verdict as permitted by K.S.A. 60-444(a).

In *State v. Mitchell*, 234 Kan. 185, 672 P.2d 1 (1983), we held K.S.A. 60-441 was controlling. In *Mitchell*, the defendant was convicted of aggravated robbery. While six witnesses were customers at the nightclub the night this robbery occurred, only the bartender gave a positive identification of the defendant as the robber. The evening after the trial was concluded, defense counsel taped an interview with one of the jurors in the trial. This juror testified about discussions among the jurors during their deliberations. A subsequent affidavit, drawn up by the defendant, alleged three instances of misconduct, including that the verdict rendered was not this juror's verdict and therefore not a unanimous verdict. The trial court ruled that the affidavit was not admissible because it delved into the mind of the juror, which is prohibited by K.S.A. 60-441.

On appeal, we agreed and affirmed the conviction, stating:

"The purpose of [K.S.A. 60-441] is to preserve the integrity and finality of jury verdicts. *Ingram v. State*, 204 Kan. 836, 837, 465 P.2d 925 (1970). Further, public policy forbids the questioning of a juror on the mental process used in reaching a verdict since 'there is no possible way to test the truth or veracity of the answers.' *Kincaid v. Wade*, 196 Kan. 174, 178, 410 P.2d 333 (1966).

"In reviewing testimony similar to Ms. Craig's affidavit that the verdict rendered was not her verdict this court has held 'the mere fact a juror who joins in a verdict later professes to believe the defendant innocent is no basis for ordering a mistrial.' *Crowley v. Ottken*, 224 Kan. 27, 31, 578 P.2d 689 (1978). Also, immediately after the verdict was rendered the trial court polled each juror individually, including Ms. Craig. They advised the court the verdict rendered was their own.

"Ms. Craig stated in the affidavit she was under a lot of pressure from the other jurors to change her vote, so she did. This court has held a juror may not divulge what considerations influenced such juror in arriving at a verdict. *Crowley v. Ottken*, 224 Kan. at 31. Ms. Craig's affidavit testimony does just that." 234 Kan. at 191.

In *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 856 P.2d 906 (1993), the appellant nightclub argued that a new trial was warranted because the jury disregarded the trial court's instructions. The nightclub attempted to prove that the jury was confused about the court's instructions on fault and that the jury disregarded

the instructions of the court concerning damages. The nightclub presented an affidavit from Mr. Buford, the jury foreperson, stating that the jury did not understand the instructions and found them confusing and that, absent this confusion, the verdict would have been different.

We held:

"Buford's affidavit may not be used to impeach the verdict because the affidavit probes into the mental processes of the jury. Admissibility of evidence to test a verdict is governed by statute. K.S.A. 60-444(a) provides that if the validity of a verdict is in question a juror may testify 'as a witness to conditions or occurrences either within or outside the jury room' except as limited by K.S.A. 60-441. K.S.A. 60-441 specifies that 'no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined.'

" 'Under these statutes we have held that a juror may not impeach his or her verdict on any ground inherent in the verdict itself; a juror may not divulge what considerations personally influenced him or her in arriving at the verdict or what reasoning personally led him or her to the final decision. *State v. Taylor*, 212 Kan. 780, 512 P.2d 449 (1973). More recently in *Crowley v. Ottken*, 224 Kan. 27, 31, 578 P.2d 689 (1978), it was pointed out that evidence is not admissible under K.S.A. 60-441 if it only pertains to the reasons a juror joined in the verdict. To be admissible the evidence must relate to extrinsic misconduct or to physical facts or occurrences within or without the jury room.' *Verren v. City of Pittsburg*, 227 Kan. 259, 260, 607 P.2d 36 (1980).

'The mental process of a juror in reaching a verdict or the factors which influence the mental process cannot be inquired into for the purpose of impeaching a verdict. Public policy forbids the questioning of a juror on these matters for a very obvious reason, *i.e.*, there is no possible way to test the truth or veracity of the answers.' *Saucedo v. Winger*, 252 Kan. 718, 729, 850 P.2d 908 (1992).

See *Crowley v. Ottken*, 224 Kan. 27, 31, 578 P.2d 689 (1978) (juror's affidavit to impeach verdict inadmissible; affidavit 'did not relate to extrinsic misconduct or to physical facts or occurrences within or without the jury room but only to the reasons she joined in the verdict'); *Smith v. Union Pacific Railroad Co.*, 214 Kan. 128, 134-35, 519 P.2d 1101 (1974) (trial court properly excluded juror's affidavit that stated jury 'instructions were not clear and were confusing to some of the jurors')." 253 Kan. at 476.

The relevant holdings in *Cott* were set forth in Syl. ¶¶ 10 and 11 as follows:

"A juror may not impeach his or her verdict on any ground inherent in the verdict itself in a proceeding seeking a new trial; a juror may not divulge in a court proceeding what considerations personally influenced him or her in arriving at the verdict or what reasoning personally led him or her to the final decision."

"A juror's mental process in reaching a verdict or the factors that influence the mental process cannot be inquired into for the purpose of impeaching a verdict. Public policy forbids the questioning of a juror on these matters for a very obvious reason, that is, there is no possible way to test the truth or veracity of the answers."

Defendant does not challenge the holdings of these cases applying K.S.A. 60-444(a), but contends the testimony herein shows juror misconduct which deprived him of his constitutional right to trial by jury. For support he relies upon *Saucedo v. Winger*, 252 Kan. 718, 850 P.2d 908 (1993).

In *Saucedo*, damages were sought for the death of Pablo Saucedo. It was contended that Pablo had died as a result of defendant physician's failure to diagnose and treat his heart condition. Pablo spoke little English. Some members of his family had accompanied Pablo when he was examined by defendant. The physician testified he had sought diagnostic information from Pablo's sons, who served as interpreters. One of the sons, Eric, testified he could not speak or understand Spanish. During the jury's deliberations, one juror advised the others that his daughters attended school with Eric and she had advised her father that Eric was fluent in Spanish. Another juror had stated during deliberations that Pablo's uncle was a cocaine dealer and it was possible Pablo had died of a cocaine overdose. The majority of the court held:

"A party is denied the right to a fair trial when a juror introduces evidence on material issues of fact to the jury during its deliberations. Plaintiff did not receive a fair trial because, under the facts of this case, the two incidents of jury misconduct introduced extraneous evidence during jury deliberations which had a substantial effect upon the issues and the validity of the verdict. The trial judge's refusal to recall the jury and determine whether the extraneous evidence substantially affected the jury's verdict was error which requires that plaintiff receive a new trial." 252 Kan. at 733.

Citing language from *Saucedo*, defendant argues that K.S.A. 60-441 does not preclude impeachment of this jury verdict because, under the facts presented by this case, the verdict violates defendant's constitutional right to trial by jury.

The State asserts that an identical argument was rejected by this court in *State v. Kaiser*, 260 Kan. 235, 918 P.2d 629 (1996). It is appropriate to quote *Kaiser* in some depth, as follows:

"The defendant filed a motion for a new trial based on the affidavit of one of the jurors, Eugenia Tunley. Tunley's affidavit stated that during jury deliberation she expressed her opinion to the other jurors that the defendant was not guilty of the charges. She stated that the other jurors made various statements as to her age (she was a teenager) and their desires to end the case quickly because of the upcoming holidays. Tunley's affidavit also stated that she was told by the jurors 'the majority rules' and that she had to change her position and could not state to the judge that it was not her verdict when the jury was polled. Tunley stated that as 5 p.m. on the last day of deliberations and the Christmas holiday grew nearer, she was pressured to change her vote so the other jurors would not have to return. Tunley stated that she voted guilty against her belief because of the pressure and coercion of the other jurors. Tunley stated that she subsequently felt bad about her vote and informed the defendant and his attorney of the pressure which resulted in changing her vote to guilty.

"The defendant contended that Tunley's verdict of guilty was the product of coercion by other jurors, and he filed a motion requesting that the trial court grant a new trial or recall the jurors for a hearing. The court refused to conduct an evidentiary hearing or recall the jurors because the claimed error delved impermissibly into the mental process of the jurors, K.S.A. 60-441, and Tunley had individually agreed to Kaiser's guilt when the jury was polled.

"A new trial will be granted only if required in the interest of justice. K.S.A. 22-3501(1). Juror misconduct is not grounds for a new trial unless it is shown to have substantially prejudiced the defendant's rights. *State v. Goseland*, 256 Kan. 729, 735, 887 P.2d 1109 (1994); *State v. Cady*, 248 Kan. 743, 756, 811 P.2d 1130 (1991).

"The procedure for and limitations on challenging the validity of a jury verdict are statutory. K.S.A. 60-444(a) states that a juror is not exempt 'from testifying as a witness to conditions or occurrences either within or outside of the jury room having a material bearing on the validity of the verdict . . ., except as expressly limited by K.S.A. 60-441.' K.S.A. 60-441 prohibits testimony concerning the mental processes of the jury: 'Upon an inquiry as to the validity of a verdict . . . no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict . . . or concerning the mental processes by which it was determined.'

"Both K.S.A. 60-444(a) and K.S.A. 60-441 are implicated here. The information in Tunley's affidavit concerning the statements made by other jurors is objective material about which testimony may be taken under K.S.A. 60-444(a) without controverting K.S.A. 60-441. The question is whether the information in Tunley's

affidavit and the effect these statements had on her verdict were prohibited by K.S.A. 60-441.

"To support his claim that the jury's verdict could be challenged, the defendant relies on *Saucedo v. Winger*, 252 Kan. 718, 850 P.2d 908 (1992). In *Saucedo*, a medical malpractice case, two instances of alleged jury misconduct occurred. A juror informed the other jurors during deliberations that the plaintiff's son could speak Spanish though he testified that he could not, and a juror stated that the uncle of the plaintiff's deceased husband was a cocaine dealer and that it was possible the deceased died of a cocaine overdose. Based on the affidavits of three jurors admitting the misconduct, plaintiff filed a motion to recall the jury. This court agreed with the trial judge that juror misconduct did occur during deliberations. 252 Kan. at 727-28. This court held that the misconduct substantially affected the right of the plaintiff to a fair trial because a juror introduced evidence on material issues of fact and remanded the case for a new trial. 252 Kan. at 733.

"The defendant stresses the following language from *Saucedo*, 252 Kan. at 732:

" 'A review of the Kansas cases cited indicates the statutory prohibition against receipt of evidence to impeach a jury verdict by showing the mental process by which the verdict was determined does not apply where a party claims the constitutional right to a trial by jury has been violated by jury misconduct which has a substantial effect on the rights of that party.'

The defendant reasons that this statement permits jurors to testify concerning the mental processes by which the verdict was reached." 260 Kan. at 249-51.

## We held:

"The fallacy in the defendant's argument is that he ignores the concluding sentence of the quoted paragraph: 'When the jury is recalled, a juror may be questioned or evidence received as to physical facts, conditions, or occurrences of a juror's misconduct, either within or without the jury room, which were material to the issues being determined.' 252 Kan. at 732. This statement does no more than restate K.S.A. 60-444(a) concerning what testimony of jurors is admissible. Earlier in the opinion, the *Saucedo* court explicitly adhered to the prohibition of K.S.A. 60-441 against testimony concerning the effect of statements or events as influencing a juror to agree to the verdict or the mental processes by which the verdict was determined. 252 Kan. at 728. The court stated that a verdict may not be impeached by questions concerning a juror's views or conclusions, the reasons for those views or the factors used in determining those conclusions, or what influences those views or the mental process in reaching such conclusions. 252 Kan. at 728-29. The court concluded: 'Public policy forbids the questioning of a juror on these matters for a very obvious reason, *i.e.*, there is no possible way to test the truth or veracity of the answers.' 252 Kan. at 729." 260 Kan. at 251.

The relevant case law may be summarized as follows. A juror may not impeach his or her verdict on any ground inherent in the

verdict itself or divulge what considerations influenced him or her in arriving at the verdict. Inquiry may be made into the extrinsic matters of physical facts, conditions, or occurrences of juror misconduct, either within or without the jury room, which were material to the issues being determined.

We conclude that the trial court correctly held that the testimony of the two jurors was improper under K.S.A. 60-444(a) as an effort to impeach the verdict by showing the mental processes by which the verdict was reached.

## INSTRUCTIONS

The trial court examined the instructions given herein and found no error requiring a new trial. The focus is on the matter of the requirement of unanimity of a verdict. The pertinent instructions are as follows:

### "INSTRUCTION NO. 5

"The State has the burden of proving the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty; if you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty."

### "INSTRUCTION NO. 19

"Upon retiring to your jury room, you shall first select one of your members as Presiding Juror. The Presiding Juror will preside over your deliberations, will speak for the jury in Court, and will sign in the blank spaces provided the verdict you agree upon and date of verdict.

"You are the exclusive judges of the facts in this case. It is your duty to deliberate and reason together and to consider the evidence and all the instructions of the Court in your deliberations.

"In order to reach a verdict in this case, each of you must agree upon it.

"You will now listen to the arguments of counsel whose right it is to discuss the evidence and the law.

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions. It cannot be based upon any other consideration whatsoever."

Instruction No. 5 is verbatim PIK Crim. 3d 52.02 (1994 Supp.). Instruction No. 19 is a substitute for PIK Crim. 3d 68.01. As germane to the issue herein, the court substituted "In order to reach a verdict in this case, each of you must agree upon it" for the PIK language of "Your agreement upon a verdict must be unanimous."

In *Kaiser*, 260 Kan. at 251-52, the jury received PIK Crim. 3d 52.02 (Instruction No. 5 herein) and PIK Crim. 3d 68.01 requiring that a verdict be unanimous.

Here, as in *Kaiser*, the jury was polled and each juror acknowledged the verdict was his or her verdict. The trial court's denial of the motion for new trial was affirmed in *Kaiser*. The instructions are not distinguishable as relevant to the issues herein.

We find no abuse of discretion in the trial court's denial of defendant's motion for a new trial.

Before concluding, we note that, contrary to PIK Crim. 3d 68.10, only one all-inclusive verdict form was submitted with guilty or not guilty alternatives listed for the charged crime and each lesser included offense. The format of PIK Crim. 3d 68.10 should be followed where lesser included offense instructions are present.

The use of PIK instructions is not mandatory but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed. *State v. Moncla*, 262 Kan. 58, Syl. ¶ 5, 936 P.2d 727 (1997).

The judgment is affirmed.