NOT DESIGNATED FOR PUBLICATION

No. 115,566

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL LEVI DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed August 4, 2017. Affirmed.

*Randall L. Hodgkinson* and *D. Ariel Wilson*, legal intern, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*: Daniel Levi Davis was convicted of battery, aggravated battery, and criminal threat against his ex-girlfriend and two other persons. On appeal, Davis claims the district court erroneously failed to provide the jury with proper instructions for lesser included offenses. Finding no error, we affirm.

1

On May 3, 2015, after dating for over 2 years, Amy Marshall told Davis she no longer wanted to date him. Davis left the apartment after Marshall broke up with him. The next morning, Marshall walked to the house of her friend and babysitter, Samantha Ward, so she could drop her son off before going to work. Marshall's coworker, Joshua Whinery, and his brother, Joseph Whinery, picked Marshall up at Ward's house and then drove Marshall back to her apartment so that she could change her clothes before work.

When they arrived at Marshall's apartment, Davis was sitting on the porch. Marshall asked him to leave, but he followed her inside the apartment and then into her bedroom. Joshua followed Marshall into the apartment but stayed in the living room. At some point, Joseph also came inside the apartment. Marshall told Davis he needed to find somewhere else to live, and they began to argue.

Davis accused Marshall of sleeping with Joshua and Joseph and threatened to hurt Joshua. Marshall denied Davis' allegations. Marshall and Joshua told Davis they needed to get to work and Joseph needed to get back to his children. At this point, Davis ripped off a piece of wood from the staircase banister in the apartment and threw it at Joseph. Joseph put up his arm, and the banister hit his right arm and mouth, drawing blood. Marshall got between the two and tried to push Davis away from Joseph; Davis and Marshall began wrestling. As a result, Marshall received bruises to her upper arms.

Davis picked up a ceramic tea container and threatened to hit Marshall with it. Davis then threw the container toward Marshall, who ducked out of the way. But the ceramic container ultimately hit Joshua on the top of his head, ricocheted off him, and shattered against a doorframe. Joshua's head bled, and he testified he was "shaking real bad" due to a preexisting cyst in his head that caused shakiness after head injuries.

At this point, Davis pushed Marshall in the chest and threatened to kill everyone if law enforcement got involved. He also threatened to kill Marshall's son, who was still at Ward's house. Marshall sent a text message to Ward instructing Ward to call the police. Ward called Marshall, heard the fight through the phone, and called the police.

Davis previously had called a friend to come pick him up. The friend entered the apartment during the scuffle and helped wrestle Davis away from Marshall. Joseph snuck down the stairs and out of the apartment, and Joshua climbed down one of the deck posts to escape. The brothers drove directly to the sheriff's office, which sent them to the police department to make a report. In an interview with Officer Jason Goza with the Independence Police Department, Joshua and Joseph reported they had been in an altercation with Davis. Both were examined by emergency medical services, which recommended that they go to the emergency room. Joseph and Joshua met Marshall at the sheriff's department, took her to work, and then went to the hospital. X-rays showed Joseph suffered a hairline fracture and a severe bruise where the wooden banister hit him. Joshua did not seek professional medical treatment.

Davis was interviewed by law enforcement the following day. He told Officer Goza that he threw a ceramic canister at a wall and it shattered. Davis denied throwing a wood banister and denied knowing how Joshua and Joseph were injured.

The State charged Davis with aggravated battery against Joseph, aggravated assault with a deadly weapon for placing Marshall in fear of immediate body harm, aggravated battery against Joshua, and criminal threat. The district court instructed the jury on battery (sometimes referred to as "simple battery") as a lesser included offense of aggravated battery. The jury found Davis guilty of simple battery against Joseph, not guilty of aggravated assault against Marshall, guilty of aggravated battery against Joshua, and guilty of criminal threat. The court sentenced Davis to 38 months in prison, consecutive to another case for which he was on parole. Davis timely appealed.

3

ANALYSIS

Davis raises three arguments on appeal, all pertaining to alleged errors the district court made when instructing the jury. First, Davis contends that the district court erred in failing to instruct the jury on reckless aggravated battery, a lesser included crime of aggravated battery. Second, Davis claims the court erred in failing to provide proper verdict forms to the jury. Finally, Davis contends that even if neither of the instruction errors was reversible, their cumulative effect of the jury instruction errors was to deny him a fair trial.

When analyzing jury instruction issues, appellate courts make three determinations: (1) whether the issue can be reviewed, (2) whether any error occurred, and (3) whether any error requires reversal. *State v. Barber*, 302 Kan. 367, 376-77, 353 P.3d 1108 (2015). This court applies the same clear error standard to verdict form errors. *State v. Burnett*, 293 Kan. 840, 847, 270 P.3d 1115 (2012); *State v. Hunter*, 41 Kan. App. 2d 507, 513, 203 P.3d 23 (2009).

With regard to reviewability, Davis did not object to the lack of an instruction to the jury on reckless aggravated battery, a lesser included crime of aggravated battery, or to the verdict forms provided to the jury, which he now alleges were improper. Ordinarily, an appellant may not challenge an issue that was not preserved for appeal. But there is a special rule for jury instructions, including lesser included crime instructions, in the Kansas statutes: This court will review those challenges for "clear error." See K.S.A. 2016 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict . . . or the failure to give an instruction is clearly erroneous."). An instruction is clearly erroneous when ""the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."" *Barber*, 302 Kan. at 377.

Having found the jury instruction challenges reviewable, we then must determine whether there was any error. To make that determination, we consider whether the omitted instruction on the lesser included offense of reckless aggravated battery and the verdict forms provided to the jury were legally and factually appropriate, employing an unlimited review of the entire record. *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012). Legal appropriateness in this case is whether the omitted instructions or the challenged verdict forms appropriately state the applicable law. Like all questions of law, this court reviews the legal question using an unlimited standard of review. To determine whether the omitted instructions or challenged verdict forms were factually appropriate, we must determine if there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, to support a factual basis for the instruction or the verdict form. 295 Kan. 506, Syl. ¶ 4.

If we ultimately find there was an error in failing to instruct the jury on the lesser included offense of reckless aggravated battery or in providing legally or factually inappropriate verdict forms, then we apply the "clear error" test referenced above to determine whether the error requires us to reverse the conviction at issue. Again, an inappropriate jury instruction is clearly erroneous when "''the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'''" *Barber*, 302 Kan. at 377; *Williams*, 295 Kan. 506, Syl. ¶ 8. Whether instructional error is clearly erroneous requires review of the entire record and de novo determination. The burden of showing clear error belongs to the complaining party. *Williams*, 295 Kan. at 516.

*Reckless aggravated battery*

Davis argues the district court erred in failing to *sua sponte* instruct the jury on reckless aggravated battery as a lesser included offense of aggravated battery. Davis was charged with two counts of aggravated battery:  one each against Joseph and Joshua. At

the close of trial, the district court instructed the jury on knowing aggravated battery and the lesser included offense of simple battery for each of the two counts.

The jury was instructed on aggravated battery as the primary offense: "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2016 Supp. 21-5413(b)(1)(B). This is a severity level 7 person felony. K.S.A. 2016 Supp. 21-5413(g)(2)(B).

The jury also was instructed on the lesser included offense of simple battery, which was defined as "knowingly caus[ing] bodily harm" to another person. See K.S.A. 2016 Supp. 21-5413(a)(1). Battery under this section is a class B person misdemeanor. K.S.A. 2016 Supp. 21-5413(g)(1). The jury convicted Davis of aggravated battery of Joshua and simple battery of Joseph.

Davis now contends that the jury should have been instructed on a second lesser included offense of reckless aggravated battery as provided in K.S.A. 2016 Supp. 21-5413(b)(2)(B), which defines reckless aggravated battery as "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." That offense is a severity level 8 person felony. K.S.A. 2016 Supp. 21-5413(g)(2)(D).

To determine whether the district court erred, we first examine whether a reckless aggravated battery instruction would have been legally and factually appropriate. The parties do not dispute that the instruction would be legally appropriate. A lesser included crime includes a lesser degree of the same crime. K.S.A. 2016 Supp. 21-5109(b)(2). Because a severity level 8 aggravated battery is a lesser degree of a severity level 7 aggravated battery, the former is a lesser included offense of Davis' aggravated battery charge. See, *e.g.*, *State v. Horne*, No. 111,945, 2015 WL 6832956, at *4 (Kan. App.

6

2015) (unpublished opinion) (reckless aggravated battery, severity level 5 or 8 offense, is a lesser degree of knowing aggravated battery, severity level 4), *rev. denied* 305 Kan. 1255 (2016); *State v. Crutchfield*, No. 89,278, 2004 WL 235428, at *1 (Kan. App. 2004) (unpublished opinion) (same).

The dispute here is centered on whether the reckless aggravated battery instruction was factually appropriate. A court is required to instruct on a lesser included offense only if (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict according to that theory and (2) the evidence does not exclude a theory of guilt on the lesser included offense. *State v. Simmons*, 282 Kan. 728, 741, 148 P.3d 525 (2006).

Davis asserts that the evidence of his behavior related to Joshua supported the instruction. In support of his assertion, Davis cites to Officer Goza's trial testimony stating Davis told Officer Goza that Davis threw a ceramic jar against the wall and it broke, that Davis did not know how Joshua and Joseph got hurt, and that Davis was "out of it" at the time of the incident. Davis argues on appeal that throwing an object in the vicinity of a person is reckless because it might strike the person, as it did in this case.

But Officer Goza's testimony does not support a reckless aggravated battery instruction. To factually support a lesser included instruction of reckless aggravated battery, Davis must point to some evidence showing he consciously disregarded a substantial and unjustifiable risk that a result would follow and his disregard amounted to a gross deviation from what a reasonable person would do in the same situation. See K.S.A. 2016 Supp. 21-5202(j). If the jury were to believe Davis' statement to Officer Goza—that the canister Davis threw hit the wall and Joshua was injured in some other way—it would have to believe that Davis' action of throwing the canister was not the cause of Joshua's injury. In other words, the jury would have to find Davis not guilty of any type of battery offense against Joshua, whether simple, reckless, or aggravated. The

evidence, even when viewed in the light most favorable to the Davis' theory, simply does not support a jury verdict for reckless aggravated battery.

In fact, we find the evidence actually excludes a theory of guilt based on reckless aggravated battery. All of the evidence presented regarding the incident suggests that Davis acted intentionally in throwing the canister to harm Marshall. Several witnesses testified that Davis threatened Marshall with the ceramic canister and followed up the threat by throwing it at her, but Marshall ducked out of the way and the canister hit Joshua in the head and shattered against a doorframe. There is no evidence that Davis recklessly threw the canister. And Davis did not argue to the jury that his actions were reckless. In closing argument, defense counsel framed the altercation between Davis, Joshua, and Joseph as a "brawl" or a "fight" and asked the jury to convict Davis of simple battery (which is an intentional crime) on grounds that Joshua and Joseph did not suffer great bodily harm and because the wood banister and ceramic canister were not deadly weapons. See *Horne*, 2015 WL 6832956, at *6 ("Horne did not argue the theory of reckless conduct at trial. The evidence left the jury with the following options—Horne shot Cargile intentionally or the gun discharged accidentally. There was no evidence Horne acted merely recklessly.").

Without any evidence of reckless conduct, the jury could not have returned a different verdict if a reckless aggravated battery instruction was given. *Williams*, 295 Kan. 506 Syl. ¶ 4. Accordingly, we find no error in the district court's failure to *sua sponte* instruct the jury on the lesser included offense of reckless aggravated battery.

*Verdict forms*

Davis next argues the district court provided the jury with improper verdict forms for counts 1 and 3 regarding aggravated battery and the lesser included offense of simple

8

battery. This court applies the same clear error standard as applied to jury instructions. *Burnett*, 293 Kan. at 847; *Hunter*, 41 Kan. App. 2d at 513.

The verdict forms issued by the district court provided the jury with a "not guilty" and "guilty" verdict form line as to the primary charge of aggravated battery and as to the lesser included offense of battery. As to count 1, the verdict form read as follows:

"We, the jury, find the defendant **NOT GUILTY** of Count I. (Aggravated Battery; Intentional Bodily Harm with a Deadly Weapon, against Joseph Whinery)

"_____
"Presiding Juror

"OR

"We, the jury, find the defendant **GUILTY** of Count I. (Aggravated Battery; Intentional Bodily Harm with a Deadly Weapon, against Joseph Whinery)

"_____
"Presiding Juror

"OR

"We, the jury, find the defendant **NOT GUILTY** of Battery. (Lesser included offense of Count 1, against Joseph Whinery)

"_____
"Presiding Juror

"OR

"We, the jury, find the defendant **GUILTY** of Battery. (Lesser included offense of Count 1, against Joseph Whinery)

"_____
"Presiding Juror."

The verdict form for count 3 was identical but applied to Joshua.

Davis contends that the court's verdict forms were legally improper because they did not conform to the PIK instructions, which require a "guilty" verdict line as to the principal and each lesser included offenses, and one overall "not guilty" verdict line for

9

the charge. PIK Crim. 4th 68.110 "Lesser Included Offenses—Verdict Form" provides the following format:

"We, the jury, find the defendant guilty of *insert principal offense charged.*

"_____

"Presiding Juror

"We, the jury, find the defendant guilty of *insert lesser included offense.*

"_____

"Presiding Juror

"We, the jury, find the defendant not guilty.

"_____

"Presiding Juror."

The Notes on Use to the instruction further explain: "A verdict form should be completed for each criminal offense charged. A verdict form should also include any lesser included offenses under the crime charged and a verdict of not guilty." The use of PIK instructions is not mandatory but is strongly recommended.

"The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed." *State v. Franklin*, 264 Kan. 496, 505, 958 P.2d 611 (1998) (citing *State v. Moncla*, 262 Kan. 58, Syl. ¶ 5, 936 P.2d 727 [1997]).

See also *State v. Tully*, 293 Kan. 176, 197, 262 P.3d 314 (2011) ("When a district court ventures from the standard language of a pattern instruction, the court runs the risk of including or omitting words that are essential to a clear statement of law."); *State v.*

10

*Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009) (use of PIK instructions is not mandatory, but strongly recommended absent particular need to alter instructions because of facts of case).

Here, there is no indication that the district court considered the PIK verdict forms and found a need to depart from the format in this case. Thus, it would have been legally and factually appropriate for the district court to use the PIK verdict forms Davis argues in favor of on appeal.

But before reversal is required, Davis must show that the court's failure to use the PIK verdict forms was clearly erroneous. To find clear error, the appellate court must be "firmly convinced that the jury would have convicted the defendant of the lesser included offense, if given the choice." *Williams*, 295 Kan. 506, Syl. ¶ 8. Our Supreme Court has found that in some circumstances, the submission of a verdict form of guilty and not guilty for the main charge and each lesser included offense can be misleading to the jury and thus clearly erroneous. See, *e.g.*, *Franklin*, 264 Kan. at 505; *State v. Schaefer*, 190 Kan. 479, 481, 375 P.2d 638 (1962).

In *Schaefer*, cited by Davis, the district court made the same verdict form error as is alleged here: it submitted to the jury six different verdict forms—a guilty verdict form for the main charge of felonious assault and one each for the two lesser included offenses, and one of not guilty for the main charge and one each for the two lesser included offenses. During deliberation, the jury in that case informed the court that it agreed on the main count but was unable to agree on the lesser included offenses. The court sent the jury back to consider the lesser included offenses. The jury again informed the court that it could not reach a decision on the lesser included offenses. The court then instructed the jury to sign the verdict of not guilty upon the charge on which they agreed—the main charge of felonious assault. The defendant was then discharged from the principal and

11

lesser included offenses. The State moved for a mistrial because the jury was unable to reach a decision, which the court overruled.

On review, our Supreme Court held that the district court's error in submitting the six verdict forms without a blank verdict of not guilty "was confusing and of a certainty partially misled the jury into the resultant dilemma." 190 Kan. at 481. Ultimately, the court held that the district court's "undue examination of the jury" invaded the province of the jury to dictate the verdict, which is "a matter so delicate and important to the rights and liberty of the accused as to not be permitted." 190 Kan. at 481-82. Rather than directing the jury to sign the not guilty verdict form regarding the principal charge, the district court should have discharged the jury on the grounds that there appeared to be no probability it would agree. 190 Kan. at 482.

Unlike in *Schaefer*, the district court here did not interfere with the jury's deliberation process. There was no indication that the jury in this case had any problem understanding the verdict forms or that the forms led to any confusion or inability to agree on its verdicts. To the contrary, the jury demonstrated a clear understanding of the instructions: it found Davis guilty of aggravated assault against Joseph and of only simple battery against Joshua, as it indicated by signing the appropriate verdict form lines for each count. Furthermore, the jury demonstrated that the two "not guilty" verdict form lines did not cause it confusion. With regard to count 2—aggravated assault of Marshall—the jury signed both not guilty verdict form lines for the principal offense and the lesser included offense.

This court must be "firmly convinced" the jury would have reached a different conclusion had the PIK verdict forms been issued. *Barber*, 302 Kan. at 376-77; *Williams*, 295 Kan. 506, Syl. ¶ 8. Here, nothing suggests the jury would have rendered a different result had different verdict forms been submitted to the jury. As such, we find the verdict forms issued by the district court in this case were not clearly erroneous.

12

*Cumulative error*

Davis argues that even if neither the jury instruction nor the verdict form issues were reversible error on their own, the cumulative effect of the errors denied him a fair trial. In a cumulative error analysis, this court aggregates all errors and, even though those errors would individually be considered harmless, analyzes whether their cumulative effect on the outcome of the trial is such that collectively they cannot be determined to be harmless. *Tully*, 293 Kan. at 205.

A single error cannot constitute cumulative error. *State v. Frierson*, 298 Kan. 1005, 1020, 319 P.3d 515 (2014); *State v. Stafford*, 296 Kan. 25, 60, 290 P.3d 562 (2012). Here, Davis has only shown that one trial error occurred, and that trial error was not clearly erroneous. Accordingly, the cumulative error doctrine is inapplicable.

Affirmed.